**SISTERS OF THE THIRD ORDER OF ST. FRANCIS, doing business as Saint Anthony Medical Center, as assignee of Debra Wright, Plaintiff–Appellant,**

v.

**SWEDISHAMERICAN GROUP HEALTH BENEFIT TRUST, Defendant–Appellee.**

No. 89-2039.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 1990.

Decided April 19, 1990.

Rehearing Denied May 10, 1990.

---

assigned to the Medical Center her claim for reimbursement. The Trust refused to pay, invoking Article 8.1(*o*), which excludes coverage for "expenses incurred ... [w]hile engaged in any illegal or criminal enterprise or activity." Drunk driving is an "illegal ... activity", the Trust's Plan Committee concluded. The Medical Center has filed this suit under § 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a), seeking from the Trust the cost of restoring John Wright to health, nearly $33,000. The district court granted summary judgment for the Trust.

Two preliminary matters: the identity of the plaintiff and the degree of deference due the Plan Committee's construction of the terms of the Plan. In the district court the Trust argued that the Medical Center could not maintain this suit because the terms of the Trust's governing documents require the Plan Committee's approval for any assignment of benefits. ERISA requires the terms of welfare trust agreements to be respected, *Central States Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148 (7th Cir.1989) (en banc). The Trust does not repeat this argument on appeal, and it does not affect the court's subject-matter jurisdiction. ERISA provides that a "participant or beneficiary" may sue in federal court, 29 U.S.C. § 1132(a)(1)(B), and defines beneficiary as one who "is or may be entitled to benefits" under a plan, 29 U.S.C. § 1002(8)—which fits the Medical Center if the assignment is valid, as we must treat it in the absence of contrary argument. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989) (persons with a "colorable claim" to benefits are entitled to invoke federal jurisdiction).

Thomas D. Luchetti, Rockford, Ill., for plaintiff-appellant.

Bradley T. Koch, Robert L. Holzwarth, Richard D. Gaines, Kim M. Casey, Holmstrom & Kennedy, Rockford, Ill., for defendant-appellee.

Before FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Driving late at night with more than twice the lawful level of alcohol in the blood, John Wright left the road and plowed into a tree. A rescue squad took him to the Saint Anthony Medical Center. Wright was not breathing when he arrived, but the staff revived him. His wife Debra, whose employer provided her and her family with medical benefits through the SwedishAmerican Group Health Benefit Trust,

■ The Medical Center and the Plan Committee lock horns about the meaning of the Plan and the cause of the crash. The Medical Center wants *de novo* adjudication of these questions; the Plan Committee maintains that its decisions are entitled to deference. The district court first accepted the Plan Committee's position, on the authority of *Van Boxel v. Journal Co.*

*Employees' Pension Trust*, 836 F.2d 1048 (7th Cir.1987), and *Pokratz v. Jones Dairy Farm*, 771 F.2d 206 (7th Cir.1985), then on rehearing accepted the Medical Center's submission, on the authority of *Firestone*, which holds that review under ERISA follows the pattern of trust law: presumptively *de novo*, but deferential when the instrument insulates the trustee's decisions from searching review.

> Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers.... A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable.

*Firestone*, 109 S.Ct. at 954. A plan containing no provisions about construction accordingly leads to *de novo* review, while a plan expressly granting the trustee leeway yields deferential review. Not surprisingly, most plans, drafted before *Firestone*, are in between. The SwedishAmerican instrument provides that the Plan Committee's powers include authority "[t]o construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of any benefits hereunder." The parties dispute the significance of this grant.

This language might be taken as "power to construe disputed or doubtful terms" within the meaning of *Firestone*. Because trustees may carry out their duty without language of this sort, its presence frequently signals the existence of discretion in implementation. See Bogert & Bogert, *Law of Trusts and Trustees* §§ 551, 560 (2d ed. 1980). Perhaps, though, it describes *who* shall decide (the Plan Committee, as opposed to other parties involved in the establishment and implementation of this complex welfare benefits plan) rather than the *extent* of the Committee's powers. Courts predictably have divided over the characterization of such ambiguous language. Compare *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186–87 (4th Cir.1989), *Curtis v. Noel*, 877 F.2d 159, 161 (1st Cir.1989), and *Lowry v. Bankers Life & Casualty Retirement Plan*, 871 F.2d 522, 524–25

(5th Cir.1989), treating language similar to that in the SwedishAmerican Plan as granting discretion sufficient to require deferential review, with *Baxter v. Lynn*, 886 F.2d 182, 187–88 (8th Cir.1989), and *Electrical Workers v. Southern California Edison Co.*, 880 F.2d 104, 108 (9th Cir. 1989), going the other way.

*Bali v. Blue Cross & Blue Shield Ass'n*, 873 F.2d 1043, 1047 (7th Cir.1989), the only case in our court that has tackled the question after *Firestone*, concluded that a clause specifying that disability shall be determined "on the basis of medical evidence satisfactory to the Committee" furnished the Committee with sufficient discretion to prevent *de novo* review of what kinds of evidence could be used. *Bali* does not visit larger questions concerning the right way to read general power-granting clauses of the kind before us, although it does establish that magic words (such as "the committee has discretion to ...") are unnecessary. We need not do so either, for even if *Firestone* calls for *de novo* review the Plan Committee's decision must stand.

■ The Medical Center demands a trial on the question whether besotted driving caused the crack-up. It waived the subject by not contesting it before the Plan Committee. It did scarcely more in the district court. In response to the Trust's motion for summary judgment, which essentially invoked *res ipsa loquitur*, the Medical Center did not offer any evidence suggesting a genesis unrelated to John Wright's imbibing. If evidence suggested that a mechanical defect in the car led it off the road, or that Wright swerved to avoid an oncoming vehicle, a trial would be essential. The record contains no such evidence. The Medical Center's only theory is that loose gravel on the shoulder prevented Wright from getting his car back on the road. This is not only unsupported but also irrelevant, because it does not meet the inference that Wright's inebriation led him to drive on the shoulder, where gravel and worse hazards await. The court properly disposed of this question summarily. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Is driving while soused "illegal ... activity" within the scope of Article 8.1(*o*)? Driving with a blood alcohol level of .211 is illegal in Illinois. The statutory limit is .10, and drunk driving is a misdemeanor punishable by a year's imprisonment, Ill.Rev. Stat. ch. 95½ ¶ 11–501(c), and is a felony if substantial harm comes to another, *id.* at ¶ 11–501(d)(3). Wright pleaded guilty to driving under the influence and was sentenced to probation plus 120 hours of public service. The Medical Center submits that this crime is not the sort of "illegal ... activity" to which the Plan refers, but its lawyer conceded at oral argument that if Wright smacked into a tree while under the influence of heroin, he would not be entitled to benefits. Why should the identity of the drug matter? The same statute applies to both. Ill.Rev.Stat. ch. 95½ ¶ 11–501(a).

Drunk driving is a serious crime, causing the deaths of more than 20,000 persons annually. Department of Health and Human Services, *Toward a National Plan to Combat Alcohol Abuse and Alcoholism* (1986). If Wright had injured someone other than himself, he would have had to pay up, for debts attributable to drunk driving may not be discharged in bankruptcy. 11 U.S.C. § 523(a)(9); *In re Pahule*, 849 F.2d 1056 (7th Cir.1988). That he injured himself rather than a stranger is not a sufficient reason to disregard the language of the Plan and shift the costs of his injury to someone else. Injuries arising from the combination of liquor and motor cars are self-inflicted, and a health insurance plan (which the Trust is) need not draw down the assets contributed by the provident many to shift the cost of self-destructive behavior.

Whatever the "public policy" of Illinois may be, this case arises under federal law. ERISA preempts state law and lets a health and welfare plan draft its own rules. Nothing in ERISA requires a plan to cover any particular injuries. A plan may conclude that people who face financial ruin as well as the pain caused by injuries are less likely to take to the road after drinking, so that those covered by the plan will on balance be better off as a result of the exclusion. There will be more drunk driving, and higher costs for coverage, if courts frustrate the efforts of welfare benefit plans to limit these benefits to the victims of misfortune. Although Illinois may believe that benefits should be available for injuries arising out of illegal risk-taking, a court applying ERISA ought not engraft notions of "good policy" onto that complex statutory scheme. See *Guidry v. Sheet Metal Workers Pension Fund*, —— U.S. ——, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), and *Gerber Truck Service*.

■ This leaves only the contention that Wright's medical expenses were not "expenses incurred ... [w]hile engaged in" illegal drunk driving. The district court read "while engaged in" to comprise "as a result of", and the Medical Center challenges this deviation from the "plain meaning" of the Plan. According to the Medical Center, "while engaged in" should be read strictly. If Wright had marched into the Medical Center and forced a physician at gunpoint to put a splint on a broken finger, then he would have "expenses incurred ... [w]hile engaged in" a crime. A stalwart tree brought an end to Wright's crime, however, and the ensuing treatment did not occur while he was "engaged in" any illegal escapade.

Too clever by half. This reading would drain the exception of meaning, make it ludicrous. Courts depart from "plain" language to avoid absurdity. *Green v. Bock Laundry Machine Co.*, —— U.S. ——, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring); *Church of the Holy Trinity v. United States*, 143 U.S. 457, 458–59, 12 S.Ct. 511, 511–12, 36 L.Ed. 226 (1892). But we need not torture the words "while engaged in" until they confess to a novel meaning. The structure of the Plan shows that its drafters used "while" to include "as a result of". Article 8.1(m) excludes coverage for "expenses incurred ... [w]hile in the service of any of the Armed Forces". Medical expenses incurred "while in the service" are covered, automatically, by the military. This exclusion thus must mean that the Plan does not cover "expenses incurred" after discharge,

but attributable to injuries "while in the service". Counsel for the Medical Center conceded this at oral argument. The Plan Committee read "while" in § 8.1(*o*) just the way the Medical Center concedes is the best reading of "while" in § 8.1(m). No more need be said.

AFFIRMED.