**Gerard E. LICCIARDI, Plaintiff,**

v.

**KROPP FORGE DIVISION EMPLOYEES RETIREMENT PLAN, et al.,**
**Defendants.**

No. 91 C 4516.

United States District Court,
N.D. Illinois, E.D.

Sept. 4, 1991.

William J. Cooney, Geoffrey G. Gilbert, Lynne Mapes–Riordan, McBride, Baker & Coles, Chicago, Ill., for plaintiff.

Leornard S. Shifflett, Keith J. Shuttleworth, Burke, Wilson & McIlvaine, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Lone Star Forge Company ("Lone Star") has moved to dismiss the Complaint brought by Gerard Licciardi ("Licciardi") against codefendants Lone Star and Kropp Forge Division Employees' Retirement Plan (the "Plan") for the claimed violation

of Licciardi's right to benefits under the Plan.[1] Lone Star contends that it is not a proper party defendant for Licciardi's ERISA action, which Licciardi's counsel identifies as brought under 29 U.S.C. § 1132(a)(1)(B).[2] For the reasons briefly stated in this memorandum opinion and order, Lone Star's motion is denied.

Before Lone Star entered the picture, the "Employer" (as defined in Plan § 1.12) and "Company" (as defined in Plan § 1.8) under the Plan was Anadite, Inc. ("Anadite"). Effective as of September 21, 1987 the Plan was amended to redefine the "Company" as Lone Star and to add this new Plan § 16.5 captioned "Change of Plan Sponsor":[3]

> Notwithstanding anything in the Plan to the contrary, on and after September 21, 1987, Lone Star Forge Company becomes the Plan sponsor and administrator and assumes all the rights, powers, duties and obligations of the Company under the Plan. Anadite, Inc. to the fullest extent permitted by law, shall be relieved of any liability for contributions and payment of benefits under the Plan, which liability is expressly assumed by Lone Star Forge Company. Except as amended herein, Lone Star Forge Company reaffirms the provisions of the Plan and evidences such reaffirmation by its execution of the First Amendment to the Plan.

This Court must of course accept all of Licciardi's allegations as true for current purposes, with all reasonable inferences drawn in his favor (*Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir. 1987) (per curiam)). And if any set of facts can be proved consistent with those allegations that would establish a claim on which Licciardi would be entitled to recover against Lone Star, the Complaint cannot be dismissed (*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). Accordingly this opinion will recite the alleged facts as Licciardi presents them (though of course no findings of fact or conclusions of law are made or implied by this Court).

Complaint ¶ 5 says that Lone Star terminated the Plan effective as of November 15, 1989, substituting the purchase of an annuity contract with Principal Mutual Life Insurance Company ("Principal") for the payment of Plan benefits. Licciardi says on information and belief that the result was to "create[ ] a substantial surplus of Plan assets that reverted to or for the benefit of Lone Star" (*id.*).

Some ten years earlier Licciardi's employment with Anadite (of which he was then President and Chief Operating Officer) had terminated (Complaint ¶ 6). Because his benefits under the Plan were then fully vested, he was set to become entitled to a pension beginning October 1, 1990, his sixty-fifth birthday and the normal retirement age under the Plan (*id.*).

When it came time in 1990 to calculate Licciardi's pension, Lone Star omitted from Licciardi's pre-termination earnings a payment of $650,000 that Anadite had made to Licciardi in 1979—a payment that was characterized at that time as compensation for services previously rendered to Anadite. That omission of course dramatically reduced Licciardi's average monthly earnings during the pre-termination period, the figure upon which the monthly retirement benefits under the Plan was calculated.[4]

Lone Star points to the distinction in the case law between ERISA suits to recover benefits against the Plan as an entity under Section 1132(a)(1)(B) and suits

---

1. Exhibit A to Licciardi's Complaint reproduces the Plan as restated as of October 31, 1985.

2. Further citations to that and other ERISA provisions will simply take the form "Section—," employing the Title 29 numbering rather than ERISA's internal section numbering.

3. Complaint Ex. B reproduces that amendment to the Plan.

4. Plan § 1.2 calls for a monthly pension of 1% of the employee's "Average Monthly Earnings" multiplied by the employee's "Years of Benefit Service." In turn, Plan § 1.5 defines Average Monthly Earnings as 1/60th of the employee's "Earnings" for the five consecutive calendar years of employment with the highest "Earnings." And Plan § 1.10 appears to state an all-inclusive definition of "Earnings."

for breach of fiduciary duty under Sections 1109(a) and 1105(a). To that end it cites *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324–25 (9th Cir.1985) (per curiam), which in turn cites our Court of Appeals' opinion in *Thornton v. Evans*, 692 F.2d 1064, 1077 (7th Cir.1982), and *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1287 (9th Cir.1990). But in this instance, unlike any of the cases Lone Star relies upon:

1. Plan § 10.1 identified the Company (originally Anadite) as "the 'administrator' and a 'named fiduciary' of the Plan within the meaning of ERISA." And as already stated, Plan § 16.5 later operated to put Lone Star into Anadite's shoes in all respects.

2. Lone Star as Plan administrator later denied Licciardi's appeal from the initial rejection of Licciardi's claim (Complaint ¶ 11 and Ex. J).

3. Because the Plan termination put money into Lone Star's corporate pocket (Complaint ¶ 5), its failure to provide fully for Licciardi (if Licciardi is correct in his claim) involved a decision in its own self-interest.

*Thornton* did not involve a plan fiduciary, but rather considered whether a *non*-fiduciary could be sued under ERISA for conspiring with ERISA-defined fiduciaries (692 F.2d at 1079 & n. 35). *Gelardi* simply said that ERISA suits under Section 1132(a)(1)(B) could be brought only against the plan entity, and under Section 1109(a) only against the fiduciary (761 F.2d at 1324–25). And *Madden*, 914 F.2d at 1287 did nothing more than quote that language from *Gelardi*. Hence none of those cases impacts on the decision, reached in the next paragraph of this opinion, that an acknowledged fiduciary such as Lone Star *can* be sued under ERISA for any asserted breach of fiduciary duty.

When Lone Star "assume[d] all the rights, powers, duties and obligations of the Company under the Plan" and "expressly assumed" "any liability [of Anadite] for contributions and payment of benefits under the Plan" (Plan § 16.5), any such self-dealing as Licciardi charges against

Lone Star could—at least at this threshold stage—be characterized as a breach of the fiduciary obligations that it took over from Anadite. It does not matter for this purpose that Licciardi's Complaint ¶ 1 has referred in particular only to Section 1132(a)(1)(B) and not to Section 1109(a). What controls in determining the viability of a claim is the Complaint's factual allegations and *not* the legal label that has been invoked by the pleader.

Accordingly Lone Star's motion to dismiss is denied. It is ordered to answer Licciardi's Complaint on or before September 13, 1991. This action is set for a status hearing at 9 a.m. October 16, 1991.