Jim E. **LAMPEN**, Plaintiff,

v.

**ALBERT TROSTEL & SONS CO. EMPLOYEE WELFARE PLAN and The Travelers Plan Administrators of Illinois, Inc.**, Defendants.

Civ. A. No. 92–C–1359.

United States District Court, E.D. Wisconsin.

Sept. 28, 1993.

---

**1288**

Lance S. Grady, Previant Goldberg Uelmen Gratz Miller & Brueggeman, Milwaukee, WI, for plaintiff.

Paul D. Braun, Karl A. Dahlen, Foley & Lardner, Milwaukee, WI, for Albert Trostel & Sons Employee Welfare Plan.

John R. Pendergast, Riordan Crivello Carlson Mentkowski & Steeves, Milwaukee, WI, for Travelers Plan.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

Presently before this court are defendants' motions for summary judgment and a cross-motion for summary judgment filed by the plaintiff, Jim Lampen ("Lampen"). Lampen has sued his company's welfare plan and the plan's claims administrators for damages resulting from the denial of medical benefits. Title 29, § 1132(a)(1)(B), (e)(1) of the United States Code grant this court jurisdiction over this case. For the reasons stated below, this court will grant the defendants' motions for summary judgment and dismiss this case.

## FACTS

At all times relevant to this case, plaintiff Jim Lampen was an hourly employee of Albert Trostel Packing, Ltd. ("Trostel Packing") and was a participant in defendant Albert Trostel & Sons' company employee welfare plan (the "Trostel Plan"), which is a self-funded employee health benefit trust organized and maintained under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). Defendant Travelers Plan Administrators of Illinois, Inc. ("TPA"), is the claims administrator, an "independent contractor appointed by the Fiduciary to perform administrative services" pursuant to the claims administration agreement in effect at the time of the denial of benefits (the "Agreement"). (¶ 1.02 Agreement.) The Agreement names Albert Trostel & Sons Co. (the "Trostel Company") as the plan administrator and the plan sponsor, which is also the fiduciary. (¶¶ 1.07, 1.08, 8.07.)

On November 3, 1991, Lampen suffered injuries in an automobile accident in Walworth County, Wisconsin. The sheriff's deputy who investigated the accident cited Lampen for inattentive driving in violation of Walworth County Ordinance No. 346.89(1). The deputy did not cite Lampen for driving while intoxicated; however Lampen's records from his hospitalization after the accident indicated a blood alcohol level of .2 percent.

The Trostel Plan in effect at the time of the accident excluded payment for health claims resulting from:

> Bodily injury resulting directly or indirectly from insurrection, war, service in the armed forces of any country or participation in a riot or *during the commission of an act of crime.*

(emphasis added). (Summary Plan Description for Hourly Employees of Trostel Packing, Exh. A, p. 16 at ¶ F, attached to July 9, 1993 Somodi Aff.) The plan does not define what constitutes a crime. Ms. Lisa Myers, the TPA employee who handled the plaintiff's claim, denied benefits after seeing the hospi-

tal records indicating a blood alcohol concentration above Wisconsin's legal limit for driving an automobile, because she concluded that the plaintiff was injured during the commission of a crime. (Sept. 10, 1992 letter from claims administrator denying benefits.) In order to do so, Myers relied on Wisconsin law, which prohibits driving a motor vehicle with a blood alcohol level of .1 percent or higher. (Wis.Stat. §§ 340.01(46m), 346.-63(1)(b).) She also relied on one or more telephone conversations with the controller for the Trostel Company, whose duty it is to oversee the administration of the Trostel Plan and who told her that anything that was not considered to be legal would not be covered under the plan. (Dep. of Lisa Myers, p. 38–20, attached to Aug. 4, 1993 Grady Aff.)

The controller states that at least three meetings were held prior to Lampen's accident with hourly employees of Trostel Packing. He states that in those meetings, employees were "reminded that a covered employee's intoxicated use of a motor vehicle was a criminal act" and that the Trostel Plan and amended Plan [1] would not cover injuries resulting from a drunk driving accident. (July 9, 1993 Somodi Aff. ¶ 4.) Lampen says that he never attended any meetings at which the terms of the Trostel Plan or the exclusions were explained to him. (July 28, 1993 Lampen Aff.) The controller also states that the Trostel Plan consistently denies benefits to employees who were injured while driving under the influence of alcohol on the grounds that their claims were the result of their criminal acts. (July 9, 1993 Somodi Aff. at ¶ 5.)

Ms. Myers' initial and final denial of Mr. Lampen's claim for benefits was not subjected to any further review. However, under the Agreement, the plan administrator (the Trostel Company) possesses the "ultimate authority to decide all questions of eligibility ... for the payment of benefits to Participants under the Plan." (Agreement, ¶ 2.04.) Further, the employer or trustee has "absolute authority with respect to the control, management, investment, disposition or uti-

lization of Plan assets," but may instruct the TPA as claims administrator to "utilize Plan assets in any manner the Employer and Trustee deem proper." (Agreement, ¶ 2.08.) The Agreement authorizes the TPA to "do all acts necessary and proper to carry out" its enumerated functions. Agreement ¶ 3.01. The TPA adjusts and settles all claims for benefits "in accordance with the terms and conditions of the Plan" and subject to the ultimate decisional authority of the plan administrator. (Agreement, ¶ 3.02.)

Paragraph 4.01 of the Agreement specifically states that the TPA is only the administrative agent of the fiduciary and is not a fiduciary of the Trostel Plan in its own right:

> In fulfilling its duties and obligations under the Agreement, in no respect shall the Claims Administrator be deemed to be the administrator of the Plan for purposes of ERISA, nor shall the Claims Administrator be deemed a Trustee with respect to Plan assets which may be used to fund Plan benefits.

(Agreement, ¶ 4.01.) Under the Agreement, the TPA is not the insurer or underwriter of the liability of the Trostel Company, nor does it have discretion regarding the control or management of Plan assets. (Agreement, ¶¶ 4.02–.03.)

Both the TPA and the Plan have moved for summary judgment against Mr. Lampen, and Mr. Lampen has moved for summary judgment against each of the defendants for coverage of his medical expenses incurred as a result of the accident.

## ANALYSIS

A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477

---

1. The Plan was amended in December of 1991. However, no substantive changes were made to

the crime exclusion. (July 9, 1993 Somodi Aff.)

**1290**

U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the initial burden of asserting the absence of any dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether the movant has satisfied this burden, the court must draw all reasonable inferences from the record in favor of the non-moving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989).

ERISA preempts state law and governs this case. *See, e.g., Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126 (7th Cir. 1992). The plaintiff has brought this action against the defendants for wrongful refusal of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) under which a participant or beneficiary may bring a civil action against the plan entity to recover benefits due or to enforce rights under the terms of his or her plan. *See, Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324–25 (9th Cir.1985) (per curiam); *Licciardi v. Kropp Forge Div. Employees Retirement Plan*, 772 F.Supp. 1069, 1071 (N.D.Ill.1991).

Under 29 U.S.C. § 1109, a participant or beneficiary may also sue fiduciaries to employee benefit plans for breaches of ERISA's fiduciary provisions. The plaintiff has argued that the TPA in this case acted as a plan fiduciary, that it breached its responsibilities when denying Lampen benefits, and that Lampen can recover personally for that breach. The TPA has moved for summary judgment stating that it is not a fiduciary and cannot therefore be sued, and that even if it were a fiduciary it would only be subject to a suit for breach of fiduciary duty brought on behalf of the plan and not by an individual seeking to recover a denied benefit. The court will address the TPA's summary judgment motion first.

### TPA Summary Judgment Motion

■ Because the TPA is not the plan entity, it may not be sued under § 1132(a)(1)(B). The claims against the TPA must be restricted to breach of fiduciary duty, and therefore this court must grant summary judgment for the TPA if it is not a fiduciary.

ERISA defines a fiduciary to a plan as one who:

> (i) ... exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) ... renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) ... has any discretionary authority or discretionary responsibility in the administration of such plan. . . .

29 U.S.C. § 1002(21)(A). Courts define "fiduciary" broadly in accordance with Congress' intent to protect the interests of the plan participants and beneficiaries. *See, e.g., Mut. Life Ins. Co. v. Yampol*, 840 F.2d 421, 425 (7th Cir.1988). The lack of absolute discretion is not dispositive. *See Id.*

It is undisputed that TPA was the Trostel Plan Claims Administrator. The parties disagree, however, as to whether or not TPA is a fiduciary as defined in ERISA, and therefore subject to suit. *See* 29 U.S.C. § 1109(a). The TPA argues that it has not taken on a fiduciary role in this case as defined under ERISA and applied in this circuit. Even taking each of the plaintiff's assertions regarding the nature of the discretion exercised by the TPA as true, the governing document in this case—the plan—makes it abundantly clear that the TPA is bound to follow guidelines and cannot make its own.

Under ERISA, only those with discretionary authority are fiduciaries. *Id.; Pohl*, 956 F.2d at 129. A plan or claims administrator does not hold a fiduciary duty if its powers are merely "clerical, mechanical [and] ministerial." *Id.* (plan administrator not fiduciary and not liable for negligent misrepresentation when it merely performed the ministerial functions listed in ERISA regulations). Seventh Circuit cases and the bulk of authority in this area indicate that when, as in this case, the claims administrator's decision-making authority falls only within the ambit of implementing rules established by another entity and is subject to the "ultimate deci-

sional authority" of that entity, the claims administrator is not a fiduciary. *See Pohl,* 956 F.2d at 129; *Gelardi,* 761 F.2d at 1325; *Baker v. Big Star Div. of Grand Union Co.,* 893 F.2d 288 (11th Cir.1989); *See also* Agreement, ¶ 3.02.

The plaintiff cites *Brown v. Retirement Comm. of Briggs & Stratton Retirement Plan,* 575 F.Supp. 1073 (E.D.Wis.1983) and *Reilly v. Blue Cross & Blue Shield United,* 846 F.2d 416 (7th Cir.), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988), for the proposition that the TPA is a fiduciary because it administered the plan and made the decision to deny benefits to the plaintiff. However, neither of those cases controls here. In *Brown,* this court found that when a trustee and disbursing agent to a plan is not involved in the decision to refuse to pay the benefits in question, there is no controversy between the plaintiff and the trustee. 575 F.Supp. at 1077. Here, the TPA *was* involved in making the decision to deny benefits, but it does not follow from *Brown* that the TPA is automatically a fiduciary. In *Reilly,* the circuit court stated that a plan administrator was a fiduciary for ERISA purposes. 846 F.2d at 419. However, in that case, the administrator's fiduciary status did not appear to be in question, and the circuit has since made it clear that not all plan administrators are fiduciaries. *Pohl,* 956 F.2d at 129.

A plan administrator may be a fiduciary under ERISA if it exercises discretion over the plan, but it is not a fiduciary when merely following the guidelines of the plan. *Id.* The Agreement authorizes the TPA to settle claims for benefits in accordance with the terms and conditions of the Trostel Plan and subject to the ultimate authority of the plan administrator. It expressly denies the TPA any discretion over the disposition of Plan assets, and states that the TPA is not liable for payment of claims, and that it is merely the administrative agent of the fiduciary and not the fiduciary. The plaintiff argues that the terms of the Trostel Plan

should be ignored and that the actions of Lisa Myers show that the TPA had discretionary power and fiduciary duties. She made the initial denial of benefits, and also the final denial upon a request for review by the plaintiff. In doing so, however, she relied upon plan policy of denying benefits for injuries sustained during any act that was not considered to be legal. She was merely doing all that the TPA was allowed to do— implementing the policies of the plan, be they correct or not.

The TPA is not a fiduciary under the facts of this case. The TPA may only disburse benefits pursuant to the plan and does not have the discretion necessary to be a fiduciary,[2] and is therefore not a correct party to this suit.

Because the court finds that the TPA is not subject to an action for breach of fiduciary duty in this case, it need not reach the issue of whether a breach of fiduciary duty claim runs only to the plan and not to individual beneficiaries.

### Cross Summary Judgment Motions of Lampen and the Trostel Plan

In order to resolve the cross summary judgment motions presented to the court by the Trostel Plan and Lampen, this court must review the interpretation of the "crime" exclusion in the Trostel Plan. On this issue, the parties agree that the language of the plan does not give the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Therefore, this court will review the denial of benefits de novo. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Under this standard, the court must not defer to any party's interpretation, but instead must review the claim by "looking to the terms of the plan and other manifestations of the parties' intent." *Id.* at 112–13, 109 S.Ct. at 955–56. The Supreme Court in *Firestone* noted that the

---

2. This finding is in accord with a recent decision by the Northern District of Illinois, which found that the TPA was not a fiduciary under ERISA for the Pleasant View Nursing Home because it was only authorized to adjust and settle claims "in accordance with the terms and conditions of the plan." *Sherman v. Pleasant View Nursing Home, Inc.,* No. 92–C–6302 (N.D.Ill. June 24, 1993).

courts should be guided by common-law trust principles of interpretation when developing federal common law in ERISA cases. *Id.;* *see also Phillips v. Lincoln Nat'l Life Ins. Co.,* 978 F.2d 302 (7th Cir.1992).

■ The plaintiff's claims for medical expenses were denied under the exclusion of coverage for health costs resulting during the commission of an act of a crime. The plaintiff first argues that the term "crime" is ambiguous and should not include conduct for which the employee was not convicted. He further argues that even if he had been charged with drunken driving under Wisconsin law, which prohibits a person from driving a motor vehicle with a blood alcohol level of .1 percent or higher, Wis.Stat. §§ 340.-01(46m), 346.63(1)(b), a first violation is punishable by forfeiture. Wis.Stat. § 346.65(2). *See County of Walworth v. Rohner,* 108 Wis.2d 713, 717, 324 N.W.2d 682 (1982); *State v. Schulz,* 100 Wis.2d 329, 331, 302 N.W.2d 59 (Ct.App.1981). Lampen states that because this would have been his first offense, it would have been "civil in nature" and therefore not a crime. Finally, Lampen argues that the federal common law of ERISA includes the rule of contract interpretation, *contra proferentum,* so that courts in this circuit should construe ambiguous terms of an ERISA insurance plan in favor of the employee or beneficiary. *Id.* at 312–13. The usefulness and applicability of this rule is dubious when the plan is self-funded and the result of collective bargaining—for who, then, is the drafter against whom the court should construe ambiguous terms? *Cf. Eley v. Boeing Co.,* 945 F.2d 276, 280 (9th Cir. 1991); *Phillips,* 978 F.2d at 312.

However, this court finds the Seventh Circuit has unambiguously determined that drunken driving is a crime for the purposes of a nearly identical crime exception to an ERISA health plan. *Sisters of Third Order of St. Francis v. SwedishAmerican Group Health Benefit Trust,* 901 F.2d 1369 (7th Cir.1990). Thus, even if the word "crime" were drafted by the employer plan alone, the *Sisters* decision controls, and drunk driving is a crime for these purposes in this Circuit. *Id.* at 1372.

This court will reject as illogical Lampen's attempt to distinguish *Sisters* on the grounds that in that case, the plaintiff beneficiary was charged with driving while intoxicated and suffered criminal punishment. *See Sisters,* 901 F.2d at 1372. The terms of the Plan do not require a conviction. There are a myriad of reasons why a person may not be charged with a crime which have no bearing on his or her guilt or innocence—someone may rob a store and die from wounds from a battle with police after incurring medical expenses but before being charged with any crime. This could not mean that she has not robbed the store or committed the crime, requiring a plan such as the one covering Mr. Lampen to cover her expenses. This would defy logic and common sense. Nor is Lampen's act any less of a crime due to the fact that in Wisconsin, those who drive a motor vehicle while under the influence of alcohol are subject to civil forfeiture for first-time violations, and fines and imprisonment for later offenses. *Wis.Stat.* §§ 346.63(1), 346.65(2). The Seventh Circuit has stated that drunken driving is a crime under nearly identical plan language without restricting its holding to repeat violators or the type of punishment received. *See Sisters,* 901 F.2d at 1372. Further, the Wisconsin Supreme Court has indicated that a repeat violation is not a third element of the crime of driving while intoxicated. *State v. McAllister,* 107 Wis.2d 532, 535, 319 N.W.2d 865 (1982) ("graduated penalty structure is nothing more than a penalty enhancer ... which does not in any way alter the nature of the substantive offense"). Finally, it would defy logic to require coverage of injuries resulting for one beneficiary's actions while denying it for another's identical actions solely because the second beneficiary had been caught doing it once before.

It remains only to determine whether the plaintiff's medical expenses were incurred during the commission of illegal drunk driving. This court finds that there is no *genuine* factual dispute over Lampen's state of intoxication during the accident. Lampen never disputed the fact during the review process, and only now makes a half-hearted attempt to throw some doubt on the results of the blood-alcohol test taken after he had been transported to the hospital. Lampen

offers no evidence to suggest any other result or explanation, and therefore this court will reject it summarily.

Further, the plaintiff has raised no genuine suggestion that anything other than his intoxicated state precipitated the accident. *See Sisters,* 901 F.2d at 1371 (lower court properly disposed of the question of whether "besotted driving caused the crack-up" when no evidence suggested any genesis unrelated to the plaintiff's imbibing). He never raised the causation issue during the Plan's review of the denial of his claim, and the treating physician diagnosed the cause of the accident as "acute alcohol intoxication." (Myers Dep. at 15–16, Exh. 6 at 14.) Lampen has not presented evidence sufficient to overcome the inference that his inebriation led to the accident.

**IT IS THEREFORE ORDERED** that the motion for summary judgment of defendant Albert Trostel & Sons Company Employee Welfare Plan is GRANTED.

**IT IS FURTHER ORDERED** that the motion for summary judgment of defendant Travelers Plan Administrators of Illinois is GRANTED.

**IT IS FURTHER ORDERED** that the motion for summary judgment of the plaintiff Jim E. Lampen is DENIED.

**IT IS FURTHER ORDERED** that this case is dismissed with prejudice.