## Marla S. HAIDLE and Joseph A. Haidle, Plaintiffs,

v.

## CHIPPENHAM HOSPITAL, INC. and Aetna Life Insurance Company, Defendants.

### Civ. A. No. 3:93CV820.

United States District Court,
E.D. Virginia,
Richmond Division.

June 9, 1994.

Alexander Nathan Simon, Richmond, VA, for plaintiffs.

Jennings Grey Ritter, II, John Edward Holleran, Hunton & Williams, Richmond, VA, and Mark E. Edwards, Jeanne Casstevens Thomas, Nashville, TN, for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on defendants' motions for summary judgment. For the reasons stated below, the Court grants the motions.

### I. *Facts*

Effective August 1, 1991, the plaintiffs, Joseph A. Haidle and Marla S. Haidle, became enrolled in an employee benefit plan offered through Marla Haidle's employer, defendant Chippenham Hospital, Inc. ("Chippenham Hospital"), by Hospital Corporation of America ("HCA"), the parent company of Chippenham Hospital. The plan provides coverage for certain medical expenses. Pursuant to the terms of an administrative services agreement, Aetna Life Insurance Company ("Aetna") provides claims processing and other administrative services with respect to the medical benefits provided under the plan.

The plan expressly limits coverage for medical expenses due to a preexisting condition to $1,000. The HCA Employee Benefits Handbook defines "preexisting condition" as

> an illness or injury or a condition related to an illness or injury for which treatments or services were received or drugs prescribed within three months before the date coverage begins.

On May 7, 1992, Joseph Haidle underwent dental surgery, which was performed by John Alexander, D.D.S. That same day, Alexander received a letter from Aetna which stated that "[b]ased on the description of the proposed surgery, it appears that this procedure will be a covered expense under the plan." (Mem.Supp. of Summ.J., Ex. A–1.) The letter also indicated, however, that it

was not a guarantee of benefits. (*Id.*)[1] The total medical expenses for the dental services were $17,299.87. The various health care providers involved in the surgery subsequently submitted claims for services to Aetna for reimbursement by the plan. Ultimately, Aetna denied payment of all but $1,000 of the submitted claims on the basis that a post-operative report by Alexander revealed that Haidle's surgery arose from a preexisting condition as defined by the plan.[2]

On or about November 12, 1993, plaintiffs filed a motion for judgment in the Circuit Court of the City of Richmond seeking to recover the amount of the claims denied by Aetna. The essence of plaintiffs' motion for judgment is a state law claim based on the common law theory of estoppel. Plaintiffs allege that Aetna made oral representations prior to Joseph Haidle's surgery that the expenses of the surgery would be covered under the plan, that Haidle reasonably relied on such representations and that defendants are therefore estopped from denying coverage under the plan for such medical expenses. *See* Motion for Judgment, ¶¶ 15–16.

Chippenham Hospital removed the case to this court, citing the concurrent jurisdiction of federal courts pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

## II. *Analysis*

### A. PLAINTIFFS CANNOT RECOVER BASED ON THE THEORY OF ESTOPPEL

The only theory of recovery alleged by plaintiffs in their motion for judgment is the state common law theory of estoppel. ERISA, however, preempts state common law estoppel claims. *Salomon v. Transamerica Occidental Life Ins. Co.*, 801 F.2d 659, 660 (4th Cir.1986). Furthermore, with respect to application of federal common law, the Fourth Circuit has held that using estoppel principles to modify a written plan's terms would conflict with ERISA's preference for written agreements. *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58–59 (4th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993). *See also Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir.1992) (holding that "resort to federal common law generally is inappropriate when its application would conflict with the statutory provisions of ERISA, discourage employers from implementing plans governed by ERISA, or threaten to override the explicit terms of an established ERISA benefit plan.").

In *Coleman*, 969 F.2d 54, the plaintiff was a beneficiary of an employee health benefit plan that had been insured by Nationwide Life Insurance Company. Due to nonpayment of premiums by the employer, Nationwide terminated coverage for the employee health benefits, effective November 1, 1988. In January 1989, plaintiff gave birth and subsequently sought coverage for medical expenses she had incurred. Nationwide denied her claims due to the prior termination of coverage.

Plaintiff filed suit to recover benefits, contending, *inter alia*, that Nationwide was estopped from denying coverage because, prior to her child's birth, she had been told by Nationwide employees that she was covered by the employer's health insurance policy. *See* 969 F.2d at 58. The district court rejected this argument.

On appeal, the Fourth Circuit upheld the district court's conclusion that estoppel, whether denominated as state or federal common law, was unavailable to alter the unambiguous terms of an ERISA welfare benefit plan. 969 F.2d at 59–60. Accordingly, *Salomon* and *Coleman* dictate dismissal of plaintiffs' claim.

Plaintiffs contend, however, that estoppel principles may be used to interpret the plan. They correctly note that the Fourth Circuit

---

1. In addition, the letter stated that "[t]he covered medical expense is subject to any deductible, coinsurance, coordination of benefits or other provisions of the plan."

2. Aetna originally paid Henrico Doctors' Hospital 90 percent of its bill and paid the assistant surgeon 80 percent of his fee. Subsequently, however, Aetna demanded repayment of the monies based on its contention that Haidle suffered from a preexisting condition, which limited the insurer's duty to pay. Both the hospital and the assistant surgeon returned the money.

in *Coleman* reserved judgment on this issue. The court stated:

> In an effort to avoid the prohibition against using equitable estoppel to modify the written terms of a plan, Coleman claims that Nationwide's statements constituted an interpretation, not a modification, of the written plan. Based upon this construction of the facts, she argues that we should adopt the view of the Eleventh Circuit that estoppel principles may be invoked in ERISA cases when the statements at issue are interpretations of ambiguous plan provisions. [citations omitted] We need not decide whether we agree with the view of the Eleventh Circuit, however, because this case involves an outright modification, not an interpretation of the plan.

969 F.2d at 59. Plaintiffs in this case rely on Eleventh Circuit precedent to make the same argument as the plaintiff in *Coleman.* They contend that Joseph Haidle spoke with an Aetna customer service representative who told him that his impending dental surgery was covered by the plan subject to any deductible, co-insurance, coordination of benefits or other provisions of the plan. (*See* Mot. for J. ¶ 5.) They further contend that Haidle specifically asked what this "subject to" language meant, and the customer service representative responded that it referred to the possibility that the doctor or hospital would charge more than acceptable standard amounts, in which case Haidle would be responsible for any such over charges. (*Id.*) Accordingly, plaintiffs contend that Haidle's question to the Aetna representative was a question about the interpretation of the plan and that equitable estoppel is available to interpret the terms of plans covered by ERISA.

■ The Court rejects plaintiffs' argument. An ambiguous provision in a plan is one about which reasonable persons could disagree as to its meaning and effect. *National Cos. Health Benefit Plan v. St. Joseph's Hosp.*, 929 F.2d 1558, 1572 (11th Cir. 1991). If the Aetna representative's original statement concerning coverage of Haidle's dental surgery constituted the representative's effort to explain the plan in her own

words, then the statement cannot be deemed an acceptable interpretation since the provision limiting payment to a maximum of $1,000 for preexisting conditions is unambiguous. Even if this statement was a quotation from the plan itself, it was unambiguous. It clearly indicated that Haidle's coverage was subject to the other provisions of the plan. The statement merely requires a listener to know what the other provisions of the plan are that could possibly limit coverage. In attempting to explain the "subject to any deductible, coinsurance, coordination of benefits or other provisions of the plan" language, the representative failed to mention the plan's preexisting condition provision. Indeed, she failed to explain the meanings of most of the terms she had used. But each term has a precise meaning that is not subject to debate.

In rejecting plaintiff's estoppel argument in *Coleman,* the Fourth Circuit stated:

> In *Kane* [*v. Aetna Life Ins.*, 893 F.2d 1283 (11th Cir.1990) ], the Eleventh Circuit recognized that 'estoppel may not be invoked to enlarge or extend the coverage specified in a contract.' [citation omitted] In this case, estopping Nationwide from terminating the contract of insurance when no premiums were paid would have the effect of providing Coleman benefits even though the contract unambiguously indicates that she was entitled to none. We can only regard such a result as a modification of the plan's termination provision and, therefore, as being in direct conflict with the statutory requirements.

969 F.2d at 59. Similarly, in this case, it would seem that the plaintiffs seek a modification of the plan's unambiguous provision concerning preexisting conditions.

Plaintiffs argue that Judge Wilkinson in *Coleman* was particularly concerned about applying the principle of equitable estoppel in a case where no premium had been paid and where there was no writing to rely on. They contend that neither concern is applicable here because premiums have been paid and both the May 7, 1992 letter to Alexander and Aetna's initial payment of benefits are written evidence. But it seems that Judge Wilkinson's real concern was adhering to the

written terms of the insurance contract. He stated that "[u]se of estoppel principles to effect a modification of a written employee benefit plan would conflict with 'ERISA's emphatic preference for written agreements.'" 969 F.2d at 58 (citation omitted). Furthermore, he stated that based on ERISA's statutory scheme, "any modification to a plan must be implemented in conformity with the formal amendment procedures and must be in writing. Oral or *informal written modifications* to a plan, such as those alleged by Coleman in this case, are of no effect." *Id.* at 58–59 (emphasis added). Thus, it seems clear that neither Aetna's letter to the plaintiffs nor its initial payment of the bills qualifies as a formal amendment of the plan covering plaintiffs.[3]

Finally, the court notes that recently the Fourth Circuit affirmed, by an equally divided vote, a district court's incorporation of principles of equitable estoppel into the federal common law of ERISA. *See Elmore v. Cone Mills Corp.*, 23 F.3d 855, 863 (4th Cir. 1994) (en banc). The court, however, could not agree on a theory for its holding. In his concurrence, Judge Murnaghan, with whom Judges Hall and Michael and Senior Judge Sprouse concurred, found significant the fact that the plan at issue in that case was created subsequent to the authorized promise, unlike in *Coleman* and *Singer v. Black & Decker Corp.*, 964 F.2d 1449 (4th Cir.1992). Judge Niemeyer, with whom Judges Luttig and Williams joined, rejected this distinction. 23 F.3d at 878 (concurring in part and dissenting in part). Instead, he viewed the case as similar to *Coleman* and *Singer* in that "[i]n each case, the promise and the plan conflicted, and in each case, the plan was held to govern the obligations and benefits,

absent extraordinary circumstances such as a fraud or a misrepresentation." *Id.* Thus, *Elmore* cannot be read to contradict *Coleman*, which the Court finds similar to the present case. Neither Chippenham Hospital nor Aetna have any liability because of the plan's unambiguous cap on benefits arising from the plan's provision governing preexisting conditions.

## B. PLAINTIFFS CANNOT CURE THE COMPLAINT AGAINST AETNA BY AMENDMENT BECAUSE AETNA IS NOT A FIDUCIARY UNDER ERISA

█ Aetna contends that even if the Court gives plaintiffs leave to amend their complaint to state a claim under ERISA, the facts establish that no such claim exists against Aetna because Aetna is not a fiduciary as defined by ERISA.[4] ERISA provides the following definition of fiduciaries:

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). A Department of Labor interpretive bulletin further explains that a person who performs purely ministerial functions such as processing claims and

---

**3.** Plaintiffs also rely on *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In that case, the Supreme Court stated that prior to the passage of ERISA "the court reviewed the employee's claim as it would have any other contract claim—by looking at the terms of the plan and other manifestations of the parties' intent." 489 U.S. at 112–13, 109 S.Ct. at 955–56 (citations omitted). Plaintiffs argue that the entire discussion on pages 112–15, 109 S.Ct. at 955–57 of the court's opinion is based on the principle that ERISA was not meant to take away any rights employees had prior to its passage and that courts should use

traditional legal principles to interpret ERISA-governed plans. Thus, plaintiffs contend, under Virginia law, principles of equitable estoppel are applied in actions at law as well as in suits in equity and should be applied here.

In light of *Coleman*, the court rejects this argument.

**4.** Aetna also contends, without giving any specifics, that because the trial date is May 19, 1994, to allow amendment of plaintiffs' claim would unduly prejudice defendants. Because the Court finds that amendment cannot cure the complaint, it does not address this argument.

applying plan eligibility rules is not a fiduciary under ERISA. 29 C.F.R. § 2509.75–8 D–2.

Based on the above, Aetna contends that it is not a fiduciary for purposes of liability under ERISA because it exercises no discretion or control with respect to the management of the plan or its assets. Aetna argues that it merely processes benefit claims based on the express terms of the plan. Evidence of Aetna's non-fiduciary status is found in the express terms of the administrative services contract between Aetna and HCA. This contract designates HCA as the plan administrator for purposes of ERISA and provides that HCA "delegates to Aetna authority to make determinations on behalf of [HCA] with respect to benefit payments under the Plan and to pay such benefits, subject, however, to a right of [HCA] to review and modify any such determination." (Mem.Supp.Summ.J., Ex. A, Section 5(a).)

Thus, given Aetna's limited function in processing claims under the plan, it cannot be held liable under ERISA. *See Baxter v. C.A. Muer Corp.*, 941 F.2d 451 (6th Cir.1991) (holding that administrator of plan was merely a claims processor that paid claims in accordance with the terms of the plan, and as such, was not a fiduciary); *Baker v. Big Star Division of the Grand Union Co.*, 893 F.2d 288, 290 (11th Cir.1989) ("[The employer] did no more than 'rent' the claims processing department of [the plan administrator] to review claims and determine the amount payable 'in accordance with the terms and conditions of the Plan.' ... [The employer] reserved the right to review any and all claim denials.... An insurance company does not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer...."); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir.1985) (same); *Lampen v. Albert Trostel & Sons Co. Employee Welfare Plan*, 832 F.Supp. 1287, 1290–91 (E.D.Wis.1993) ("[W]hen, as in this case, the claims administrator's decision-making authority falls only within the ambit of implementing rules established by another entity and is subject to the 'ultimate decisional authority' of that en-

tity, the claims administrator is not a fiduciary.").

Plaintiffs, however, contend that though HCA has the right to review or modify Aetna's decisions, the decision in this case was not reviewed by HCA and thus the ultimate determination and authority was exercised by Aetna. Accordingly, plaintiffs rely on the statement from *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989), that "[o]ne is a fiduciary to the extent he exercises any discretionary authority or control."

The Court finds this argument unpersuasive. The administrative services contract between Aetna and HCA vests ultimate authority over the plan in HCA. Furthermore, the fact that Aetna made the actual decisions in this case is not dispositive. In *Lampen v. Albert Trostel & Sons Co. Employee Welfare Plan*, 832 F.Supp. 1287, 1291 (E.D.Wis.1993), the plaintiff argued that the terms of the plan should be ignored because an employee of the claims administrator had denied benefits to the plaintiff, thereby indicating that the administrator had discretionary power and fiduciary duties. The court stated, however, that:

> She [an employee of the claims administrator] made the initial denial of benefits, and also the final denial upon a request for review by the plaintiff. In doing so, however, she relied upon plan policy of denying benefits for injuries sustained during any act that was not considered to be legal. She was merely doing all that the [claims administrator] was allowed to do—implementing the policies of the plan, be they correct or not.

832 F.Supp. at 1291. Thus, Aetna would not become a fiduciary under ERISA by merely implementing the plan policies, which prohibit payment in excess of $1,000 for preexisting conditions. Plaintiffs argue that Aetna exercised discretionary authority when it told Mr. Haidle that his operation was covered and when it paid the providers and then changed its mind and demanded reimbursement. But processing and payment of claims are administrative functions. Furthermore, by sending the letter informing Haidle's surgeon that the operation appeared to be covered and

making other such oral indications, Aetna was implementing the terms of the policy as established by HCA. The cases previously cited make it clear that processing claims and disbursing benefit payments pursuant to a plan do not subject an administrator to liability as a fiduciary. *See also Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126 (7th Cir.1992) (holding that the plan administrator had no discretion and was therefore not a fiduciary even though it had erroneously advised plaintiffs that the plan would cover 80 percent of the costs of treatment when, in fact, the plan limited payment to $10,000.) Therefore, the Court concludes that Aetna is not a fiduciary as defined by ERISA.

### III. *Conclusion*

For the foregoing reasons, the Court grants defendants' motions for summary judgment.