# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-1764

BRYAN D. TOURDOT,

*Plaintiff-Appellant,*

*v.*

ROCKFORD HEALTH PLANS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04 C 0404 C—**Barbara B. Crabb**, *Chief Judge.*

ARGUED NOVEMBER 8, 2005—DECIDED FEBRUARY 27, 2006

Before CUDAHY, KANNE, and SYKES, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Bryan D. Tourdot (Tourdot) sustained significant injuries when he crashed his motorcycle into an automobile in Janesville, Wisconsin. Tourdot, who contends that exotic dancers at a local gentlemen's club momentarily distracted him, was legally intoxicated at the time of the crash. His health insurer, Rockford Health Plans, Inc., (Rockford) denied coverage on the basis of a provision that excludes coverage for injuries resulting from the "commission of . . . any illegal act." Tourdot, saddled with about $50,000 in hospital bills, filed suit against Rockford arguing that its illegal acts exclusion was ambiguous. The district court disagreed and granted Rockford's motion for summary judgment. We affirm.

## I. Background

On July 16, 2003, Tourdot attended a drag race in Union Grove, Wisconsin, where, according to his pleadings, he drank four or five beers. A few hours after the race, he crashed his motorcycle in Janesville, Wisconsin, which is about sixty miles west of Union Grove. Although Tourdot did not consider his driving to be impaired, a Breathalyser test administered at the scene of the accident showed his blood-alcohol level to be 0.10 g/dL. Later, a blood test administered in an emergency room showed his blood-alcohol level to be, in fact, 0.14 g/dL.

At the time of the accident, a blood-alcohol level of 0.10 g/dL or more constituted a prohibited alcohol concentration under Wisconsin law. Wis. Stat. § 340.01(46m)(a).[1] Although Tourdot's blood-alcohol level was above the legal limit, an officer cited him only for inattentive driving in violation of Wis. Stat. § 346.89(1). In Wisconsin, inattentive driving is punishable by civil forfeiture. *Id.* § 346.95(2).

As a result of the accident, Tourdot suffered a broken leg and other injuries for which he received treatment at Mercy Hospital in Janesville, where his treatment costs totaled $47,744.84. Two days later, Rockford notified Tourdot that it was denying coverage for his hospital expenses based on an exclusion for "treatment, services and supplies in connection with any illness or injury caused by a [policyholder's] operation of a motorized vehicle when legally prohibited and/or intentional use of illegal drugs." This exclusion, however, was not in effect at the time of Tourdot's accident. Tourdot accordingly challenged the denial.

---

[1] On September 30, 2003, the Wisconsin legislature reduced the prohibited level from 0.10 g/dL to 0.08 g/dL.

On October 23, 2003, Rockford revised its position to state that its denial was based on a different exclusion that was in place at the time of the denial. Specifically, Rockford clarified that it based the denial on an exclusion for "[s]ervices which result from war or act of war, whether declared or undeclared, or from participation in an insurrection or riot, or in the commission of an assault, felony, terrorist action, or any illegal act." Tourdot objected to this exclusion as well and ultimately filed suit. Both parties moved for summary judgment. The district court denied Tourdot's motion but granted Rockford's, concluding that the exclusion is clear and that Tourdot's conduct plainly fell within its scope. Tourdot then filed this appeal, contending that the use of "any illegal act" in this context is ambiguous.

## II. Discussion

We review a district court's order entering summary judgment de novo, construing all facts and drawing all reasonable inferences in favor of the nonmoving party. *Greater Chicago Combine & Ctr., Inc. v. City of Chicago*, 431 F.3d 1065, 1070 (7th Cir. 2005). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." FED. R. CIV. PRO. 56.

Tourdot frames his argument that the district court's grant of summary judgment to Rockford was inappropriate in terms of ejusdem generis, a canon of construction to be used where statutory or other language is ambiguous. *E.g.*, *Garcia v. United States*, 469 U.S. 70, 74-75 (1984); *Ortloff v. United States*, 335 F.3d 652, 658-59 (7th Cir. 2003); *United States v. Irons*, 640 F.2d 872, 875-76 (7th Cir. 1981). He argues that the policy's phrase "or any other illegal act" is ambiguous, because the context of the exclusions suggests that Rockford intended to preclude coverage

for more serious wrongs and harms (such as acts of war). This argument, while creative, turns ejusdem generis on its head.

Ejusdem generis provides guidance on how to interpret language where meaning is not plain. This Latin phrase confines the scope of a general term to the nature of the preceding class or thing, unless a contrary intent is clearly shown. *Irons*, 640 F.2d at 875-76. Since the canon is intended only as an aid to ascertaining the intent of the drafters when uncertainty or ambiguity exists, it applies only when it is not possible to determine the meaning of the words unless one focuses on the context.

That is not the case here. It is important to note that Tourdot uses ejusdem generis both to create and to resolve the ambiguity allegedly at issue in the case. Such an application of ejusdem generis is improper, since the canon may not be used to defeat the obvious purpose or plain meaning of the text. *Id.* at 876. Sanctioning such an application would frustrate the goals of plainly written text and require elaborate explanations of terms, for it is fairly easy to create an ambiguity when one wishes to do so.

Here, as the district court recognized, there is no such ambiguity. The phrase "illegal acts" has a plain meaning; it simply refers to any activity contrary to law. *Sisters of the Third Order of St. Francis v. SwedishAmerican Group Health Benefit Trust*, 901 F.2d 1369, 1372 (7th Cir. 1990). We thus have no reason to turn to ejusdem generis, because we understand the meaning of the term as it is written. Rockford's exclusion may be awkward and inelegant, but it is plain. Given that the phrase "illegal acts" plainly refers to acts that the legislature has deemed contrary to law, the next logical question is whether Tourdot's activities fall within that classification.

At the time Tourdot crashed his motorcycle, the Wiscon-

sin legislature had determined that a person with a blood-alcohol concentration above 0.10 g/dL who operates a motor vehicle has violated the law. Wis. Stat. § 346.63(1)(b). Although Wisconsin plainly proscribes drunken driving, the legislature has chosen to penalize the first offense of this sort as a civil forfeiture. *Id.* § 346.65(2)(a). The issue now is whether that penalty arrangement somehow affects the legality of the offense.

Few courts have dealt with this precise issue. The leading case in this circuit remains Judge Reynolds' thoughtful decision in *Lampen v. Albert Trostel & Sons Co. Employee Welfare Plan*, 832 F. Supp. 1287 (E.D. Wis. 1993). In that opinion, Judge Reynolds concluded that the nature of the penalty was an issue separate from the nature of the act. That is, Wisconsin's decision to penalize the first offense under the strictures of the civil system does not transform the essential nature of drunken driving. Given that the legislature has proscribed drunken driving, the penalty structure for first-time offenders is immaterial. *Lampen*, 832 F. Supp. at 1292. This conclusion is sensible. The legislature may have myriad reasons for adopting this penalty system, whose wisdom is not for us to judge. As Judge Reynolds recognized, the fact remains that drunken driving is an activity contrary to Wisconsin law. In addition, the fact that Tourdot was ticketed not for drunken driving but for inattention does not change the fact that he was indeed driving drunk, which is contrary to Wisconsin law.

Tourdot also argues that Rockford's revision of its policy to include a specific provision denying coverage for drunken driving indicates that the earlier version was indeed ambiguous. Tourdot, however, has presented no evidence on this point. Even if he had, Rockford's decision to revise its policy does not defeat the plain meaning of "illegal acts." This argument accordingly fails.

### III.  Conclusion

The reality of cases such as this one, where insurers deny coverage based on some purported wrongdoing on the part of the insured party, is that the hospital will frequently be stuck with the bill. We, of course, do not know whether Tourdot would be good for the nearly $50,000 he owes. But we are satisfied that this would generally not be the case, meaning that this sort of exclusion, aimed at moral hazard, in fact penalizes providers of medical service. This raises real questions, but they can play no part in our analysis.

Accordingly, we AFFIRM the judgment of the district court.

A true Copy:

      Teste:

                          _____

                        *Clerk of the United States Court of Appeals for the Seventh Circuit*