Marie **SHELTON–TILLEY**, Plaintiff,

v.

The **PRUDENTIAL INSURANCE COMPANY OF AMERICA**, Defendant.

**No. CIV. A. 7:00CV00483.**

United States District Court, W.D. Virginia.

Jan. 29, 2001.

Michael Alan Cleary, Roanoke, VA, for plaintiff.

Lonnie D. Nunley, III, Alison W. Feehan, Hunton & Williams, Richmond, VA, for defendant.

### MEMORANDUM OPINION

WILSON, Chief Judge.

Plaintiff Marie Shelton–Tilley ("Shelton–Tilley") brings this action against Defendant, The Prudential Insurance Company of America ("Prudential"), seeking recovery of long term disability benefits under a plan issued incident to her employment with Crestar Bank and Affiliated Companies ("Crestar").[1] Prudential issued the group long term disability plan to Crestar. Shelton–Tilley originally brought this action in the General District Court for the City of Roanoke, Virginia, and Prudential removed it to this court on the basis of preemption by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* This matter is before the court on cross motions for summary judgment. For the reasons stated, the court grants in part and denies in part Prudential's motion for summary judgment and denies Shelton–Tilley's motion for summary judgment.

### I.

The material facts of this case are not in dispute. Shelton–Tilley was employed with Crestar when she was injured in an automobile accident on October 14, 1997. On April 20, 1998, Shelton–Tilley left Crestar due to her disability. On July 13, 1998, she submitted a claim for long term disability benefits under a plan issued incident to her employment with Crestar. Prudential issued the group long term disability plan (the "plan") to Crestar. (Moran Aff. ¶ 2.) When Shelton–Tilley left Crestar, the plan in effect provided a scheduled benefit of fifty percent of annual earnings.[2] However, an earlier version of the plan, in effect from September 1, 1997, through March 31, 1998, provided a scheduled benefit of sixty or seventy percent of annual earnings. On March 23, 1999, Crestar sent an earlier version of the Summary Plan Description ("SPD") to Shelton–Tilley. (Shelton–Tilley Aff. at 68.) Fifteen days later, on April 7, 1999, Prudential sent the current version of the SPD to Shelton–Tilley. (Shelton–Tilley Aff. at 16–16CC.)

---

1. Crestar currently does business as Suntrust Banks, Inc.

2. That plan became effective April 1, 1998. (Plan at 4.)

Although initially denied, Shelton–Tilley's claim for long term disability benefits was approved on February 3, 2000, and scheduled benefits of $905.94 were awarded retroactive to October 21, 1998. Prudential later reviewed Shelton–Tilley's claim and determined that her benefits instead should have been awarded retroactive to September 18, 1998. Thus, Prudential determined that a resulting underpayment of $1,626.65 was due for the period beginning September 18, 1998, and issued a reimbursement check on March 1, 2000. In addition to long term disability benefits, Shelton–Tilley received monthly Social Security Disability Benefits ("SSDB") in the amount of $945.00.[3] Because those monthly benefits completely offset her long term disability benefits of $905.94, Shelton–Tilley received the minimum long term disability benefit of $100.00 per month.

On May 3, 2000, Prudential determined that Shelton–Tilley no longer satisfied the requirement of "total disability" and terminated her claim effective September 18, 2000. Shelton–Tilley has appealed that decision, and her appeal currently is pending before Prudential's Appeals Review Unit. Consequently, that issue is not before the court because Shelton–Tilley has not exhausted her administrative remedies.

Currently, there are two issues before the court. First, the parties disagree over which version of the plan governs Shelton–Tilley's claim. Prudential maintains that the version of the plan that became effective April 1, 1998, providing a scheduled benefit of fifty percent of annual earnings applies to Shelton–Tilley's claim. Shelton–Tilley contends that the earlier version of the plan providing a scheduled benefit of sixty or seventy percent of annual earnings

applies to her claim. Second, Shelton–Tilley contests the method in which Prudential calculated the amount of her SSDB offset. Specifically, Shelton–Tilley claims that the amount of her SSDB offset should have been lower for the first four scheduled payments to account for attorney's fees incurred in recovering those SSDB. The court will address each issue, in turn.

## II.

■ Prudential maintains that, because Shelton–Tilley left Crestar due to her disability on April 20, 1998, the version of the plan that became effective April 1, 1998, governs her claim. Thus, when it calculated Shelton–Tilley's benefits, Prudential used that plan and determined that it entitled Shelton–Tilley to scheduled benefits of fifty percent of her annual earnings.

Shelton–Tilley does not dispute that, if applied, the plan used by Prudential would afford her scheduled benefits of fifty percent of her annual earnings. Instead, Shelton–Tilley argues that an earlier version of the plan, in effect from September 1, 1997, through March 31, 1998, governs her claim, and, therefore, Prudential applied the incorrect plan in calculating her long term disability benefits. Under that earlier version of the plan, Shelton–Tilley's scheduled benefits would be either sixty or seventy percent of her annual earnings. As the basis for her argument, Shelton–Tilley notes that Crestar provided her with an earlier version of the SPD when she requested copies of the documents governing her claim. By doing so, Shelton–Tilley argues, Crestar *interpreted* the plan, ultimately concluding that the earlier version of the plan governs her claim.

---

**3.** Shelton–Tilley's rate of SSDB was $943.00 in 1998. In 1999, there was a $2.00 earnings increase.

■ Shelton–Tilley's insistence that Crestar interpreted the plan is not without significance. The Fourth Circuit has held that estoppel, whether denominated as state or federal common law, is unavailable to alter the unambiguous terms of an ERISA welfare benefit plan. *See Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 59–60 (4th Cir.1992). Thus, oral or informal written modifications to a plan are of no effect because any plan modification "must be implemented in conformity with the formal amendment procedures and must be in writing." *Id.* Consequently, in an effort to avoid the prohibition against using estoppel to modify the written terms of a plan, Shelton–Tilley maintains that Crestar interpreted, as opposed to modified, the plan when it provided her with the earlier version of the SPD. Presumably, Shelton–Tilley makes that argument because authority exists for the view that estoppel principles may be invoked in ERISA cases when the actions at issue are *interpretations* of ambiguous plan provisions. *See Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821–22 (9th Cir.1992); *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1286 (11th Cir.1990).

■ The court rejects Shelton–Tilley's argument. In order to invoke estoppel principles, the action at issue must pertain to an interpretation of an ambiguous provision. "An ambiguous provision in a plan is one about which reasonable persons could disagree as to its meaning and effect." *Haidle v. Chippenham Hosp., Inc.*, 855 F.Supp. 127, 130 (E.D.Va.1994). Here, Crestar providing Shelton–Tilley with an earlier version of the SPD when she requested copies of the documents governing her claim constitutes the action at issue. Apparently, Shelton–Tilley contends that her request for the documents governing her claim required interpretation of the plan, and, therefore, estoppel

principles may be invoked for interpreting the plan's terms.

However, Shelton–Tilley does not satisfy the precondition to using estoppel principles, as she cannot point to any "ambiguous provisions" that Crestar allegedly interpreted when it sent her the earlier version of the SPD. Instead, the only relevant provision is the one that states the plan's effective date, and that provision clearly and unequivocally states that the plan became effective April, 1, 1998, (Plan at 4), which is before Shelton–Tilley left Crestar due to her disability. That provision can have only one reasonable meaning. Thus, the provision is not ambiguous because reasonable persons cannot disagree over its meaning and effect. *See Haidle*, 855 F.Supp. at 130.

■ Because the provision establishing the plan's effective date is not ambiguous, estoppel principles cannot apply. Therefore, the court is "bound to enforce the contractual provisions as drafted." *United McGill Corp. v. Stinnett*, 154 F.3d 168, 173 (4th Cir.1998). In doing so, Shelton–Tilley cannot escape the unambiguous plan language that makes April 1, 1998, the effective date of the plan used by Prudential in calculating her benefits. Consequently, Shelton–Tilley seeks a modification, not an interpretation, of an unambiguous plan provision; namely, the plan's effective date.

As stated, oral or informal written modifications to a plan are of no effect because any plan modification "must be implemented in conformity with the formal amendment procedures and must be in writing." *Coleman*, 969 F.2d at 59–60. Shelton–Tilley has not adduced any evidence that suggests Crestar conformed with the plan's formal amendment procedures when it sent her an earlier version of the SPD upon her request for the documents gov-

erning her claim. Thus, Shelton–Tilley's argument that the earlier version of the SPD governs her claim must fail. Consequently, Prudential applied the correct version of the plan in calculating Shelton–Tilley's benefits. Accordingly, the court grants Prudential's motion for summary judgment on that issue.

## III.

■ The second issue involves the manner in which Prudential calculated the amount of Shelton–Tilley's SSDB offset. In effect, Shelton–Tilley contends that, by applying its method in calculating the amount of Shelton–Tilley's SSDB offset, Prudential denied her long term disability benefits under the plan. In cases involving the denial of benefits under an ERISA plan, a *reviewing court must review the denial de novo unless the terms of the plan give the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.* See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 107, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1021 (4th Cir.1993). Here, the plan documents do not give Prudential that discretionary authority. Consequently, the court will apply a *de novo* standard of review.

■ A plan participant's entitlement to an "award of benefits under an ERISA plan is governed in the first instance by the language of the plan itself." *Lockhart v. United Mine Workers of America, 1974 Pension Trust*, 5 F.3d 74, 78 (4th Cir. 1993). Thus, having concluded that Prudential applied the correct version of the plan in calculating Shelton–Tilley's benefits, the court must look to that plan's language to determine whether Prudential correctly calculated the amount of Shelton–Tilley's SSDB offset. Here, the amount of Shelton–Tilley's SSDB offset is governed by the "Schedule Supplement for Employee Long Term Disability Coverage." (Plan at 18.) The Schedule Supplement describes the Periodic Benefits from other sources that are used to calculate a plan participant's Offset Amount and how those Periodic Benefits are computed. (Plan at 18.)

Periodic Benefits include "loss of time disability benefits payable under or by reason of ... [t]he United States Social Security Act as amended from time to time." (Plan at 18–19.) According to that provision, "[t]his means only primary Social Security benefits paid to [the plan participant]." (Plan at 19.) Therefore, only benefits actually paid to the participant from Social Security, as opposed to the gross amount recovered from Social Security, are factored into the offset. Consequently, attorney's fees incurred in recovering SSDB have no effect on the amount of a participant's SSDB offset because they do not constitute Social Security benefits paid to the participant.

Here, Shelton–Tilley recovered $11,454.00 in past-due SSDB for October 1998 through September 1999. Of that amount, $2,863.50 was withheld to pay her attorney's fees. Because that $2,863.50 was not paid to Shelton–Tilley, it should not be included in the amount of her SSDB offset. In fact, Prudential correctly deducted $2,863.50 from the amount of Shelton–Tilley's total SSDB offset for the months at issue.

Finally, the Schedule Supplement contains a provision concerning "Lump Sum Benefits." That provision provides that "[i]f benefits from any other sources included in Periodic Benefits above are paid in a lump sum[,] ... the sum will be prorated on a monthly basis over the time period for which the sum is paid." (Plan at 20.) Here, Shelton–Tilley received a lump sum payment from the Social Securi-

ty Administration for the past-due SSDB that she recovered. (Shelton–Tilley Aff. at 56.) Thus, because SSDB are Periodic Benefits under the plan, that lump sum payment should have been prorated on a monthly basis over the time period for which the sum was paid; namely, October 1998 through September 1999.

Accordingly, because it conflicts with the clear plan language that requires lump sum benefits to be prorated on a monthly basis, the court rejects Shelton–Tilley's argument that the amount of her SSDB offset should have been lower for the first four scheduled payments. Nonetheless, the court cannot grant Prudential's motion for summary judgment on the issue because it failed to calculate the amount of Shelton–Tilley's SSDB offset as prescribed by the plan language. Consequently, although the difference likely will be negligible, the court remands this matter for the limited purpose of calculating the amount of Shelton–Tilley's SSDB offset for the months at issue in a manner consistent with this opinion.

## IV.

For the reasons stated, the court grants in part and denies in part Prudential's motion for summary judgment. In addition, the court denies Shelton–Tilley's motion for summary judgment. Finally, the court remands this matter for the limited purpose of calculating the amount of Shelton–Tilley's SSDB offset for the months at issue in a manner consistent with this opinion. An appropriate order will be entered this day.