Allie TATE, Administrator of the Estate of Nancy Lois Tate, Deceased, Appellant,

v.

Robert BORTON, Appellee.

Willa Mae DE WITT, Suing by her Father and Next Friend, Austin De Witt, Appellant,

v.

Robert BORTON, Appellee.

Court of Appeals of Kentucky.

Oct. 22, 1954.

---

P. M. Basham, Hardinsburg, Harry Black, Hawesville, for appellants.

H. Randolph Kramer, Owensboro, for appellee.

COMBS, Justice.

Nancy Lois Tate was killed and her friend, Willa Mae DeWitt, was injured when the car in which they were riding with two soldiers ran off the road and struck a guard rail and post. In separate actions for damages against the soldier who owned the car the jury found for the defendant. The cases were tried together in the trial court and will be considered together in this opinion.

The defendant relied principally on the defense of contributory negligence in that the young ladies voluntarily rode in the car knowing that the driver was under the influence of intoxicants. The principal argument for appellants is that the evidence in regard to drinking by the driver did not warrant the submission of that question to the jury, and, with that question eliminated, appellants were entitled to a peremptory instruction in their favor.

The defendant, Borton, and his companion, Don Magee, left the Ft. Knox military reservation in defendant's Oldsmobile car in the late afternoon. Borton had received his discharge from the Army that afternoon and it is a fair inference from the record that he considered this as cause for celebration. Two other soldiers left the Army post in the car with Borton and Magee. The four soldiers went to Hardinsburg, arriving there shortly before 8 p. m. Between Ft. Knox and Hardinsburg a case of beer was procured and at least part of it was consumed. Borton and Magee admit to having two beers each out of this case. In Hardinsburg, the soldiers encountered Misses Tate and DeWitt, with whom they had a speaking acquaintance, and it was agreed that Borton and Magee would drive the girls to their homes in Cloverport, some 12 or 15 miles away. The party arrived in Cloverport about 8:30 p. m. and it was then decided that the two girls would go with Borton and Magee over into Indiana to "celebrate" Borton's discharge from the Army. At this time the two soldiers who had left Ft. Knox with Borton and Magee were still in the party but they were not included in plans for the excursion into Indiana and nothing more is heard of them.

Borton and Magee and the two young ladies crossed to the Indiana side of the Ohio River at Hawesville. Their first stop was at Cannelton, Indiana, where, according to Miss DeWitt, the boys procured another case of beer, but it is not shown that any of this beer was drunk during the evening. The party then proceeded to the "Wagon Wheel" at Tell City, Indiana, where they stayed for about an hour. The Wagon Wheel is referred to by some of the witnesses as a night club, but at least one of the witnesses describes it in more prosaic terms as a "beer hall." While at the Wagon Wheel the two couples joined another group which had come over from Cloverport and all of them sat at adjoining tables on which there was a plentiful supply of beer and, according to some witnesses, a bottle of gin. All of the group appear to have been in a convivial mood, but it does not appear that any of them was drunk, as that term is ordinarily used. Miss Tate had one bottle of beer at the Wagon Wheel but the waitress declined to serve Miss DeWitt because she was under age. Borton and Magee drank their beer from what the witnesses refer to as "fish bowls." We are not furnished with a description of the "fish bowls" and we have no personal knowledge of the capacity of such a receptacle. As we construe the testimony, however, it is not established that either Borton or Magee drank more than the equivalent of one bottle of beer at the Wagon Wheel.

The two couples left the Wagon Wheel about 11 p. m. and drove out the highway to the "Lookout," which is not otherwise described in the record but which apparently is some sort of drive-in restaurant with parking space outside. The car remained parked at the Lookout for a short time, and, according to Miss DeWitt, Borton and Magee each had another can or bottle of beer there, although Magee denies drinking any at that time. The party then started back toward Cloverport, Magee driving, and had traveled only a short distance when the accident occurred. Neither Magee nor any of the other witnesses was able to give any explanation as to why the car ran off the road.

Several witnesses, including the then city marshal of Cloverport, testified they saw Magee in the Wagon Wheel shortly before the accident, and other witnesses, including a military policeman, observed his condition a short time after the accident. The substance of the testimony is that both Borton and Magee were drinking but were not drunk. It is argued by the appellant that this testimony was not sufficient to justify an instruction to the jury on the question of the driver's intoxication. We do not agree. "Drunkenness" is a relative term. To some it means one thing, and to others something else. To most people perhaps it means an excessive degree of intoxication. It does not necessarily mean stupefaction or helplessness. It is not necessary that a person be "blind drunk" or "plastered" or "drunk as a boiled owl," to use some of the vernacular expressions, in order for him to be intoxicated within the meaning of the law. A person is intoxicated when he is under the influence of an intoxicant to such extent that his physical or mental faculties are affected and his judgment impaired. 29 Am.Jur., Insurance, page 763, section 1010. Clearly, it was for the jury in this case to determine whether the driver of the car was under the influence of intoxicants to the extent that his operation and control of the vehicle were affected; also whether the driver's condition contributed to cause the accident. Even if it should be conceded that the quantity of beer Magee was seen to drink was not sufficient to intoxicate him, the circumstances were such that the jury could have believed that perhaps no accurate check was kept on the quantity of beer actually consumed by him during the course of the evening.

We have considered the other points raised by the appellants. For the most part they are ancillary to the main contention that the evidence of intoxication of the driver was not sufficient to submit to the jury, and our decision on that point is sufficient answer to the argument on the other points. It might be added in conclusion that we have examined the instructions and find no error in them.

The judgment in each case is affirmed.