**HEALTHWISE OF KENTUCKY, LTD., A Kentucky Limited Partnership, Appellant,**

v.

**David ANGLIN, Appellee.**

No. 96–SC–272–DG.

Supreme Court of Kentucky.

Nov. 20, 1997.

J. Randall Reinhardt, J. Robert Cowan, Reinhardt, Morgan & Arnold, Lexington, for Appellant.

H. Edward O'Daniel, Jr., O'Daniel & Nally–Martin, Springfield, James Dean Liebman, Frankfort, for Appellee.

JOHNSTONE, Justice.

The trial court in this case granted summary judgment to the Appellee, David Anglin, as a matter of law. The Court of Appeals affirmed the trial court's ruling. Healthwise of Kentucky, Ltd., appeals from the Court of Appeals' decision. We affirm.

The facts in this case are not in dispute. On May 7, 1991, Anglin was seriously injured in an automobile accident. Apparently, Anglin was racing another vehicle at a high rate of speed. Witnesses estimated that he was travelling at about 70 miles per hour in a 35 mile per hour zone and driving on the wrong side of the road. A collision between the two vehicles most likely caused the accident. The driver of the other vehicle was not seriously injured and was charged with driving under the influence. Anglin was never charged with any offense; however, pursuant to treatment for his injuries, Anglin's blood alcohol level was determined to be .21 percent.

Healthwise raises a number of issues on appeal which we address below.

## JURISDICTION

Healthwise first argues that the summary judgment entered by the trial court was not a final and appealable order, and, therefore, not reviewable by an appellate court. We disagree.

■ Healthwise filed a motion for summary judgment on May 5, 1993, in which it stated, "There are no genuine issues of material fact with respect to *any issue* raised by the Plaintiff's Complaint, all of which may be resolved by the Court as a matter of contract law." (Emphasis added). In its memorandum in support of the motion for summary judgment, Healthwise argued that, "Whether Healthwise is obligated to pay for the Plaintiff's medical expenses incurred as a result of his May 7, 1991 automobile wreck, is purely a matter of interpreting the relevant provisions of the contract." The trial court properly held Healthwise's feet to the fire by binding Healthwise to its stated position that Anglin's complaint raised no genuine issues of material fact and that its obligation to provide coverage depended only upon the trial court's ruling. *See BTC Leasing, Inc. v. Martin,* Ky.App., 685 S.W.2d 191, 195 (1984).

## EXCLUSIONS

At the time of the accident, Anglin was eligible to receive health and medical benefits from Healthwise pursuant to an agreement between Healthwise and Anglin's employer, the Franklin County Fire Department. On May 24, 1991, Healthwise informed Anglin in writing that it would not cover any medical expenses associated with the accident because he had committed the crime of drag racing. Anglin then appealed this decision under the Complaint Resolution Procedure set forth in Healthwise's Master Group Contract. On December 16, 1991, Healthwise again denied Anglin coverage adding Anglin's intoxication as an additional reason for the exclusion.

The two relevant coverage exclusions are:

# 3 Losses suffered as a result of participating in a riot, civil disturbance, or while

committing or attempting to commit a crime.

and

# 38 Treatment for injuries sustained as a result of being under the influence of alcohol (legal intoxication as defined by Kentucky law) or the illegal use of drugs.

The trial court found that ambiguities in these two exclusions rendered them vague and unenforceable. The Court of Appeals likewise found that the exclusions were ambiguous. Further, the Court of Appeals found that exclusion # 3 was not applicable to the facts of this case because "[t]he average person does not view traffic offenses as crimes." Thus, the Court of Appeals based its decision on the doctrine of reasonable expectations. *See Woodson v. Manhattan Life Insurance Company of New York*, Ky., 743 S.W.2d 835, 839 (1987). The Court of Appeals found that exclusion # 38, as applied to a group health plan, was void as against public policy. In the alternative, the Court of Appeals found that exclusion # 38 was not applicable because Anglin had not been adjudicated legally intoxicated.

■ We agree that the exclusions are ambiguous and that the exclusions do not bar Anglin's recovery from Healthwise. However, our reasoning differs somewhat from that of the Court of Appeals.

### CRIME EXCLUSION

We believe that the average person would view Anglin's behavior in this case as criminal. Anglin, while seriously intoxicated, purposefully drove a motor vehicle at twice the posted speed limit. Further, he was driving on the wrong side of the road while racing another vehicle. Under a different outcome, this same behavior could have led to a conviction of manslaughter or wanton murder. Anglin's dumb luck in only injuring himself and not injuring or killing someone else does not excuse or lessen the severity of his actions. However, we do not believe that the word "crime," as contained in exclusion # 3, should be defined as the ordinary person would use the word. People often use the words "crime" and "criminal" to describe actions which, though perhaps reprehensible,

are neither illegal nor unlawful. Using a subjective definition of "crime" would lead to an overly broad reading of the exclusion and inconsistent applications of it. Healthwise finds its definition of "crime" in *Black's Law Dictionary*. Anglin finds his definition of "crime" in the Kentucky Penal Code (the Code).

■ When an exclusion is susceptible to two reasonable interpretations, the interpretation favorable to the insured is adopted. *St. Paul Fire & Marine Insurance Company v. Powell–Walton–Milward, Inc.*, Ky., 870 S.W.2d 223, 226 (1994). We find additional support for Anglin's definition in exclusion # 38, in which intoxication is defined as "legal intoxication under Kentucky law." Obviously, Healthwise considers the Kentucky Revised Statutes appropriate for defining relevant terms in this contract. We therefore adopt Anglin's definition of "crime" as the correct definition.

■ The Code defines "crime" as "a misdemeanor or a felony." KRS 500.080(2). The Code defines "misdemeanor" as "an offense, other than a traffic infraction, for which a sentence to a term of imprisonment of not more than twelve (12) months can be imposed." KRS 500.080(10). In its memorandum in support of its summary judgment motion, Healthwise stated that exclusion # 3 applied because Anglin had been drag racing in violation of KRS 189.505. Drag racing is a traffic offense. The penalty for drag racing in violation of KRS 189.505 consists of a fine between $60 and $200 and/or a term of imprisonment of not more than 30 days. Thus, drag racing is a traffic infraction rather than a misdemeanor and is not a "crime" as defined in the Code. *Cf. Commonwealth v. Schindler*, Ky., 685 S.W.2d 544 (1984).

In its response to Anglin's motion for summary judgment, Healthwise cited additional statutes as crimes committed by Anglin that precluded coverage under exclusion # 3. Without addressing the issue of whether Healthwise may cite grounds for exclusion at trial that it did not give Anglin as grounds for exclusion when it originally denied coverage, we note that the analysis above applies to these statutes. These statutes likewise are located in the traffic regulation Chapters

of 189 and 189A of the Kentucky Revised Statutes, and, at the time of the accident, the maximum penalty for violating these statutes did not exceed 12 months of imprisonment. Thus, they are not "crimes" as defined by the Code. On appeal, Healthwise argues that a jury could find that Anglin had committed the crime of wanton endangerment. As this argument was not before the trial court, we will not entertain it here. *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219, 222 (1976); *see also, Capital Holding Corporation v. Bailey*, Ky., 873 S.W.2d 187, 189 (1994).

## INTOXICATION EXCLUSION

The Court of Appeals drew a distinction between individual health insurance contracts and group health insurance plans on the basis that health insurance contracts can be bargained for and group policies are offered on a take it or leave it basis. Further, the Court of Appeals found persuasive that the Legislature, under Subtitle 17 (Health Insurance Contracts) of the Insurance Code, specifically authorized exclusions for intoxication in health insurance contracts, KRS 304.17–290, and that the Legislature made no similar provision in either Subtitle 18 (Group and Blanket Health Insurance) or Subtitle 38 (Health Maintenance Organizations). These factors led the Court of Appeals to conclude that exclusion # 38 was violative of public policy when included in a *group* health plan.

While the Court of Appeals' analysis applies only to exclusion # 38 as it is written in Healthwise's contract, the Court of Appeals' holding could be misinterpreted as stating that any intoxication exclusion included in a group health plan is void as against public policy. Because the public policy issue is not squarely before us, and because we agree with the Court of Appeals' alternative analysis of the exclusion, our holding on this issue is narrower than that of the Court of Appeals.

The ambiguity contained in exclusion # 38 springs from the fact that there are several definitions of legal intoxication that could apply. Ambiguities in insurance contracts should be liberally construed so as to afford coverage. *Wolford v. Wolford*, Ky., 662 S.W.2d 835, 838 (1984). The Court of

Appeals adopted KRS 222.202(1) as the definition of intoxication most favorable to Anglin:

A person is guilty of alcohol intoxication when he appears in a public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity.

Further, the Court of Appeals found that the wording of the exclusion required a legal adjudication of intoxication before the exclusion could be applied. We agree with the Court of Appeals on both points.

Exclusion # 38, in reality, contains two exclusions:

# 38 Treatment for injuries sustained as a result of being under the influence of alcohol (legal intoxication as defined by Kentucky law) or the illegal use of drugs.

While mere illegal use of drugs triggers the application of the exclusion, mere use of alcohol does not. Nor is application of the exclusion dependent on reaching a threshold blood alcohol level. The exclusion only applies if one is under the influence of alcohol, which is a state or a status and not an act. By the terms of the exclusion, the status of being under the influence of alcohol is attained when one is legally intoxicated as defined by Kentucky law.

At the time of the accident, KRS 501.010 provided a definition of "intoxication" and "voluntary intoxication." However, these definitions encompass substances other than alcohol and, thus, are not applicable because exclusion # 38 clearly makes a distinction between alcohol and all other drugs. The same is true of the definition of "intoxication" found in KRS 222.005, which was enacted subsequent to the accident. Thus, Kentucky law does not give a definition for legal intoxication which is exclusive to alcohol. That is, there is no statute that states, "Alcohol Intoxication means . . . ." Instead, contained in Kentucky Revised Statutes are a number of statutes which make the state of alcohol intoxication, under varying circumstances, a punishable offense. It is from these statutes that the Court of Appeals adopted a definition for legal alcohol intoxication. The stat-

ute chosen by the Court of Appeals is particularly appropriate because it is limited solely to alcohol intoxication. Under the defining statute chosen by the Court of Appeals, the status of legal alcohol intoxication is determined through adjudication in a criminal proceeding. Thus, we agree with the Court of Appeals that for the exclusion to apply to Anglin "he must not only have acted in a manner described under KRS 222.202(1), but he must have been adjudicated guilty of such conduct."

■ Healthwise argues that a jury should be allowed to determine whether Anglin was legally intoxicated no matter what statute is used to define "legal intoxication." We reject this argument. The standard of proof is significantly different between civil and criminal proceedings. Moreover, the stakes are significantly different in the two proceedings. Further, even if the jury were to be instructed on the higher standard on the question of legal intoxication, Anglin still would not have attained the status of being legally intoxicated because no criminal penalty would attach to the adjudication.

Lastly, Healthwise argues that the Court of Appeals' opinion forces members of HMO's to subsidize the health costs of the undeserving inebriated and that the opinion sends the wrong message to the public. The trial court's order, the Court of Appeals' opinion, and our opinion are based on Healthwise's insurance contract as it is written. Any unfortunate consequences come not from the decision of this Court, but rather from poor draftsmanship on the part of Healthwise.

### STATUTE OF LIMITATIONS

■ Section XI of Healthwise's Master Group Contract contains the following provision entitled Legal Actions:

> No action at law or in equity may be brought to recover under the contract before the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of the contract. No such action may be brought after the expiration of one (1) year after the time written proof of loss is required to be furnished.

It is undisputed that Anglin did not file this action within the time period set forth above. Both the trial court and the Court of Appeals found that the above contractual time limitation did not apply in this case. We agree with both courts.

After Anglin's claim was initially rejected by Healthwise, Anglin proceeded under Section XII of the contract entitled "Complaint Resolution Procedure." Section XII does not contain any provisions limiting the time period in which a group member may bring legal action. Moreover, Section XII does not contain a provision limiting the time in which Healthwise must render a decision. In this case, proof of loss was furnished in May, 1991 and a final decision under Section XII was not rendered by Healthwise until December 16, 1991. Presumably, the procedure could take longer than this and might possibly extend beyond the one-year time limit set forth in Section XI. Application of the one-year limitation in the latter scenario would completely bar a group member from bringing suit.

It would be unreasonable to apply the one-year time limit found in Section XI to lawsuits filed after a final decision rendered by Healthwise under Section XII. Applying the one-year limit in this situation punishes group members for following Healthwise's own internal appeals procedure, and could result in a group member being denied access to the courts altogether.

On appeal to this Court, Healthwise has somewhat softened its original position. Instead of rigidly applying the time limitation of Section XI, Healthwise argues that Anglin's use of the Complaint Resolution Procedure of Section XII merely tolled the one-year limitation. Thus, says Healthwise, Anglin's claim is still untimely. We disagree.

Healthwise would have us imply a term into the contract that is not there. Healthwise could have included a time limitation provision in Section XII, or it could have included a provision tolling the time period as it urges. It did neither. The implication of the contract term urged by Healthwise would work to the detriment of its insured. Our rules of construction and the policy rea-

son behind them dictate that we find in favor of Anglin on this issue. Therefore, we hold that the time limitation on legal action set forth in Section XI of the Healthwise Master Group Contract does not apply to Section XII of the same contract.

## PREAUTHORIZATION PROVISION

■ In its motion for summary judgment, Healthwise argued that it was not obligated to pay Anglin because Anglin failed to get prior plan approval for his medical services as required by Section II of the contract. The trial court correctly determined that because Healthwise had denied coverage, it would have been pointless for Anglin to seek approval for his medical expenses from Healthwise.

In its brief to the Court of Appeals, Healthwise argued that even if it was pointless for Anglin to seek approval after his claim had been denied, he still should have sought approval before approval was denied. Therefore, says Healthwise, the trial court erred by holding it liable for all of Anglin's expenses incurred during the period between the occurrence of the accident on May 7, 1991, and denial of payment on May 24, 1991. The Court of Appeals found that denial of payment for this seventeen-day period would be unconscionable. In reaching this conclusion, the Court of Appeals hypothesized about Anglin's mental and physical condition and his treatment during this period. Healthwise argues that this was pure conjecture and was outside the record. Thus, says Healthwise, the Court of Appeals erred in its holding on the issue of coverage for this seventeen-day period.

We initially note that this argument was not presented to the trial court and on that basis the Court of Appeals could have refused to entertain the argument. *Kennedy v. Commonwealth*, 544 S.W.2d at 222. However, because the issue was addressed by the Court of Appeals, we will briefly address it here.

Healthwise does not argue that it denied coverage because Anglin failed to seek approval for his medical expenses. Instead, as an afterthought, it uses this as an argument to escape liability. Healthwise denied cover-age to Anglin based on exclusions contained in its contract. Whether Anglin had or had not sought approval, he would still have been denied coverage. Thus, we fail to see what point it would have served for Anglin to seek approval for his medical expenses at any time, assuming that he had the power and cognitive ability to do so.

For the reasons set forth above, the Court of Appeals decision is affirmed.

GRAVES, LAMBERT, STUMBO and WINTERSHEIMER, JJ., concur.

COOPER, J., dissents by separate opinion, with STEPHENS, C.J., joining that dissent.

COOPER, Justice, dissenting.

David Anglin was injured in an automobile accident which occurred while he was drag racing another vehicle at 70 miles per hour in a 35 miles per hour zone on the wrong side of the road. A subsequent blood alcohol test revealed his B.A. content to be 0.21 percent, more than twice the legal limit. The health insurance policy issued to Anglin by the Appellant, Healthwise of Kentucky, Ltd., contained exclusions for (a) losses suffered as a result of committing or attempting to commit a crime, and (b) treatment for injuries sustained as a result of being under the influence of alcohol. Remarkably, the majority of this Court has concluded that, as a matter of law, Anglin was neither committing a crime nor under the influence of alcohol at the time his injuries were sustained.

### I. The "Committing a Crime" Exclusion

In *Stone v. City of Paducah*, 120 Ky. 322, 86 S.W. 531 (1905), this Court defined the word "crime" for purposes of the Thirteenth Amendment of the United States Constitution and § 25 of the Constitution of Kentucky as follows:

A crime is an act or omission which is prohibited by law, as injurious to the public, and punished by the state in a proceeding in its own name or in the name of the people.... The term 'criminal,' when used in reference to judicial proceedings, is opposed to 'civil,' and, in its most comprehensive meaning may be regarded as in-

cluding all cases for the violation of the penal law.... A crime or misdemeanor is an act committed or omitted in violation of a public law either forbidding it or commanding it.... In our opinion, when the thirteenth amendment and our own Constitution to the same effect were adopted, it was understood that the word "crime" was to include misdemeanors and all offenses in violation of the penal laws.

*Id.,* 86 S.W. at 534 (citations omitted). *See also McIntyre v. Commonwealth,* 154 Ky. 149, 156 S.W. 1058, 1059 (1913). Under this definition, Anglin was committing the crimes of speeding, KRS 189.390, drag racing, KRS 189.505, and operating a motor vehicle while under the influence of alcohol (DUI), KRS 189A.010(1), at the time his injuries were sustained.

Instead of relying on the common law definition of "crime," the majority opinion adopts the Kentucky Penal Code definition contained in KRS 500.080:

> *As used in the Kentucky Penal Code,* unless the context otherwise requires:
>
> . . . . .
>
> (2) "Crime" means a misdemeanor or a felony;
>
> . . . . .
>
> (10) "Misdemeanor" means an offense, other than a traffic infraction, for which a sentence to a term of imprisonment of *not more than* twelve (12) months can be imposed. (Emphasis added.)

The majority concludes that since the definition of a misdemeanor excludes traffic infractions, the offenses of speeding, drag racing and DUI are not "crimes." Of course, the prefatory language of the statute specifically limits its applicability to the penal code. The crimes committed by Anglin are compiled not in the penal code, but in KRS chapters 189 and 189A. Regardless, KRS 532.020(3) provides as follows:

> Any offense defined outside this code for which a law outside this code provides a sentence to a definite term of imprisonment with a maximum of less than ninety (90) days shall be deemed a Class B misdemeanor.

The penalties for a first offense DUI conviction, whether under the 1984 version of KRS 189A.010(1) (coincidentally referred to as the "slammer bill"), or under the present version of that statute, include imprisonment in the county jail for not less than forty-eight hours nor more than thirty days. KRS 189A.010(2)(a) [now (4)(a) ]. *A fortiori,* DUI is a misdemeanor.

Since KRS 500.080 applies only to penal code offenses and there is no reason to assume that the policy exclusion was intended to apply only to crimes defined in the penal code, it is more appropriate to apply the common law definition of "crime" set forth in *Stone v. City of Paducah, supra,* to this exclusion.

## II. The "Under the Influence" Exclusion

Since this exclusion uses the language "under the influence of alcohol," which appears to have been lifted directly from KRS 189A.010(1), it seems likely that the parenthetical language "legal intoxication as defined by Kentucky law" was intended to refer to the statutory provision that a blood alcohol reading of 0.10 or more creates a presumption that the person being tested was under the influence of alcohol. KRS 189.520(3).

The majority simply finesses the "under the influence" language of the exclusion and focuses instead on the parenthetical language, finally concluding that the appropriate "legal" definition of "intoxication" is encompassed within the criminal offense of alcohol intoxication, KRS 222.202(1), *viz:*

> A person is guilty of alcohol intoxication when he appears in a public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity.

KRS 222.202.

However, instead of merely transforming this criminal offense into a definition, the majority concludes that since the definition is, in fact, a criminal offense, the exclusion cannot apply until and unless Anglin is actually convicted of that offense. Of course, Anglin could not even have been arrested for the offense of alcohol intoxication, since the

offense did not occur in the presence of the investigating officer. KRS 431.005. By the time the officer arrived on the scene of this accident, Anglin was no longer endangering himself or others or unreasonably annoying persons in his vicinity. He was unconscious. The illogic of requiring a criminal conviction as a prerequisite to the application of an exclusion in a health insurance policy was best addressed in *Lampen v. Albert Trostel & Sons Co. Employee Welfare Plan*, 832 F.Supp. 1287 (E.D.Wis.1993), which involved the interpretation of a "committing a crime" exclusion in a policy issued pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.*

> The terms of the plan do not require a conviction. There are a myriad of reasons why a person may not be charged with a crime which have no bearing on his or her guilt or innocence—someone may rob a store and die from wounds from a battle with police after incurring medical expenses but before being charged with any crime. This could not mean that she has not robbed the store or committed the crime, requiring a plan such as the one covering Mr. Lampen to cover her expenses. This would defy logic and common sense.

*Id.* at 1292.

Application of these types of exclusions in a health insurance policy should not depend upon whether the acts were committed in the presence of a police officer, or even whether a police officer chose to charge the policyholder with a criminal offense. The officer is not an agent of the insurer and cannot bind the insurer by his actions or inactions.

Since KRS 222.005(6) was not in effect at the time of Anglin's accident, the only statutory definition of "intoxication" was that set forth in KRS 501.010(2): "A disturbance of mental or physical capacities resulting from the introduction of substances into the body." The majority rejects this definition because it includes intoxication from substances other than alcohol. In fact, so does the exclusion in the policy, *viz:* "Treatment for injuries sustained as a result of being under the influence of alcohol (legal intoxication as de-

fined by Kentucky law) or the illegal use of drugs."

The statutory definition in KRS 501.010(2) closely mirrors the common law definition enunciated in *Tate v. Borton*, Ky., 272 S.W.2d 333 (1954). "A person is intoxicated when he is under the influence of an intoxicant to such extent that his physical or mental faculties are affected and his judgment impaired." *Id.* at 334, citing 29 Am.Jur., *Insurance*, § 1010, p. 763. Since this is a civil case, this definition appears to be more appropriate than either of the definitions contained in the penal statutes.

### III. The Summary Judgment

Both parties moved for summary judgment. Healthwise documented its motion with proof that Anglin was speeding, drag racing, and under the influence of alcohol at the time of his automobile accident. This documentation included statements of eyewitnesses and the affidavit of the officer who investigated the accident and obtained the statements. Anglin did not controvert this evidence, but rather argued that the policy exclusions were ambiguous. If either party to this action was entitled to summary judgment, it was Healthwise. *Hubble v. Johnson*, Ky., 841 S.W.2d 169 (1992). Nevertheless, under the strict summary judgment requirements set forth in *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991), I am unable to conclude that it would be impossible for Anglin to prevail at trial. *Id.* at 482. However, Healthwise was at least entitled to have a jury decide the issue.

The majority holds that Healthwise waived its right to a jury trial by asserting in its motion for summary judgment that "there are no genuine issues of fact." In fact, no motion for summary judgment may be granted absent proof that "there is no genuine issue as to any material fact." CR 56.03. If including such an allegation in a motion for summary judgment constitutes a waiver of the right to trial by jury in the event the motion is overruled, motion practice in the courts of this Commonwealth will be forever altered as a result of this case, *i.e.*, you must prove it, but you allege it at your peril. It would require only one small additional step

to conclude that a motion for summary judgment constitutes a binding judicial admission that "there is no genuine issue of any material fact" which would warrant a trial by jury if the motion is overruled.

I would reverse this case and remand it to the Franklin Circuit Court for a trial by jury as to whether Anglin's injuries were incurred while he was "committing a crime" or "under the influence of alcohol."

STEPHENS, C.J., joins this dissent.