ALICE M. BATCHELDER, Circuit Judge,
dissenting.
My agreement with the majority begins — and ends — with its holding that, under Kentucky law, the Criminal-Act Exclusion in the Cambrons’ policy is ambiguous. A finding of ambiguity requires that we then use the definition of the ambiguous term most likely to effect coverage, provided the definition is a reasonable one. Instead of choosing among reasonable definitions, however, the majority invokes the “reasonable expectations of the insured” doctrine, concluding that “here, the Cambrons would have reasonably expected to be covered for injuries resulting from their possession of the bottle rockets, despite the Criminal-Act Exclusion.” Maj. Op. 414. The closest the majority comes to saying what the term “criminal act” actually means is that it encompasses only “core criminal offenses.” Ibid.
Even if we use the definition of “criminal act” most favorable to the insured, J.J. committed a “criminal act.” The majority tries to escape this conclusion by obscuring the relevant “act,” borrowing from — but not applying — the definition of “criminal act” in Kentucky Revised Statutes Annotated §§ 216.710 and 500.080. Instead, the majority looks to American Family Life Assurance Co. v. Bilyeu, 921 F.2d 87 (6th Cir.1990). But even under Bilyeu, the Criminal-Act Exclusion is triggered because the record shows that J.J. deliberately set off the firework that injured B.T.
The Criminal-Act Exclusion is one of four potentially applicable exclusions. Because the district court held that it applies here, the district court found it unnecessary to address the other three. After reversing on the Criminal-Act Exclusion, the majority holds that summary judgment for the insurer is also inappropriate on the other three exclusions, and thus the case should be remanded for trial. Despite acknowledging that the applicability of exclusions in insurance policies is a fact-intensive inquiry, the majority decides the exclusions are not applicable, without the district court’s having developed the appropriate facts and without the parties’ having briefed the issues on appeal. I *418 would affirm the district court’s granting of summary judgment to the insurer because the Criminal-Acts Exclusion applies here. But we should at very least afford the district court the first opportunity to decide whether the Intentional-Acts, Neg-ligenf-Entrustment, and Negligent-Supervision Exclusions apply.
I.
A.
At the outset I would note that there is some confusion over when recourse to the “reasonable expectations of the insured” doctrine is appropriate under Kentucky law. The majority says that “[w]hen the terms are ambiguous, Kentucky’s reasonable-expectations doctrine applies.” Maj. Op. 412. Some cases agree. See, e.g., Hugenberg v. W. Am. Ins. Co./Ohio Cas. Grp., 249 S.W.3d 174, 185 (Ky.Ct.App.2006) (“Under the reasonable expectation doctrine, ambiguous terms in an insurance contract must be interpreted in favor of the insured’s reasonable expectations and construed as an average person would construe them.”). But the Kentucky Supreme Court has said instead that the doctrine is integral to a threshold inquiry, “[a]n essential tool in deciding whether an insurance policy is ambiguous, and consequently should be interpreted in favor of the insured .... ” Simon v. Cont’l Ins. Co., 724 S.W.2d 210, 212 (Ky.1986) (emphasis added). But here there is no debate about whether the policy is ambiguous; the “reasonable expectations” doctrine is irrelevant.
Once we find a term in an insurance contract ambiguous, we use the definition of the term most favorable to the insured — the definition most likely to effect coverage. A cardinal principle of Kentucky insurance law is that “[wjhere an exclusion is susceptible to two reasonable interpretations, the interpretation favorable to the insured is adopted.” St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc., 870 S.W.2d 223, 226 (Ky.1994). I have no disagreement with the majority opinion and other courts to the extent they use the “reasonable expectations” doctrine as a proxy for “reasonableness” in narrowing the scope of potentially applicable definitions of an ambiguous term.
But the majority instead invokes the “reasonable expectations” doctrine to avoid defining “criminal act.” To be fair, we did something similar in American Family Life Assurance Co. v. Bilyeu, 921 F.2d 87 (6th Cir.1990), where we held that the insured “would not have thought that accidents that occurred while under the influence of alcohol were excluded from coverage as a result of’ an exclusion for criminal acts because “the insured is more likely to understand it to mean[,] for example[,] burglary, armed robbery, or murder than for it to mean drunk driving.” 921 F.2d at 89 (internal quotation marks omitted). The majority here is confident that J.J.’s use and setting off of a firework and the Cambrons’ possession of fireworks are the “types of conduct that an insured person, reading the policy, would reasonably believe were covered. They are far from the core criminal offenses — burglary, armed robbery, and murder — that an insured, according to the Bilyeu court, would believe to be within the exclusion.” Maj. Op. 413-14. Although one could read the majority opinion as defining “criminal act” in the negative (in other words, the exclusion is not triggered because the acts did not involve burglary, armed robbery, or murder), the majority then admits that Bilyeu “does not mean that the Criminal-Act Exclusion only excludes burglary, armed robbery, and murder.” Maj. Op. 414. But what then does it mean?
*419 The majority never tells us, reasoning that the “reasonable expectations” doctrine requires a finding of coverage even though the majority does not decide what the term “criminal act” actually means. This may have worked in Bilyeu where drunk driving was “far from the core criminal offenses,” but surely the deliberate exploding of a firework with people nearby is not as “far from the core criminal offenses” as drunk driving is. After all, “driving” is rather a core life activity, and one for which in most states, drivers are required to obtain insurance. It is perhaps reasonable that the average driver would expect that all of his driving, even driving while drunk, illegal though it may be, is within the coverage of that insurance. But would the average homeowner really expect that his homeowner’s policy, that contains an exclusion for criminal acts, would cover injury resulting from the illegal possession, use, and explosion of fireworks purchased out-of-state? Without ' a definition of “criminal act,” it is impossible to determine whether JJ.’s and the Cambrons’ conduct is closer to drunk driving or to the “core criminal offenses.”
B.
Even using the definition of “criminal act” most favorable to the insureds, J.J. committed a “criminal act” and the exclusion is triggered. There are four definitions of “criminal act” offered by the parties. B.T. points to two definitions contained in the Kentucky Revised Statutes, the first defining “crime” for campus safety and security purposes, Ky. Rev.Stat. Ann. § 164.948(3), and the second defining “crime” for health facilities and services purposes, Ky.Rev.Stat. Ann. § 216.710(3). Both definitions would effect coverage, but we should apply neither. Although a definition need not be contained in a statute or dictionary for us to use it in interpreting an insurance policy, the definition must at least be reasonable. See St. Paul Fire & Marine Ins. Co., 870 S.W.2d at 227 (“As long as coverage is available under a reasonable interpretation of an ambiguous clause, the insurer should not escape liability... .”). It is unreasonable to use these definitions here because they are context-specific definitions exported from portions of the Kentucky Revised Statutes unrelated to the facts of this case. Section 216.710, for instance, would require a conviction or guilty plea before finding that a “criminal act” has occurred, while excluding from the definition’s ambit such quintessential^ criminal acts as murder or arson.
A third definition offered by B.T. is the Kentucky Penal Code’s definition of “crime” as “a misdemeanor or a felony.” Ky.Rev.Stat. Ann. § 500.080(2).[1] A misdemeanor, in turn, is defined as “an offense, other than a traffic infraction, for which a sentence to a term of imprisonment of not more than twelve (12) months can be imposed.” Id. § 500.080(10). And “offense” means “conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state.” Id. § 500.080(11).
One who violates § 227.710’s prohibition on the “use” or possession of fireworks “shall be fined not more than one thousand dollars ($1,000), or imprisoned in the county jail for not more than thirty (30) days, *420 or both.” Id. § 227.990(4). This “offense” is not a traffic infraction, and a term of imprisonment of thirty days “can be imposed.” B.T. responds that neither the statute prohibiting the possession or use of fireworks nor the statute penalizing such activity is part of the Penal Code. Def.’s Br. 13. Section 532.020(3) makes clear, however, that an offense located elsewhere in the Kentucky Revised Statutes may still be criminal in nature: “Any offense defined outside this code for which a law outside this code provides a sentence to a definite term of imprisonment with a maximum of less than ninety (90) days shall be deemed a Class B misdemeanor.” Accordingly, possession or use of fireworks is a “misdemeanor” and thus a “crime” under § 500.080(2). Under this definition, both J.J. and the Cambrons committed a “criminal act.”
The last definition suggested by B.T. is the one we used in Bilyeu. We said that “the insured is more likely to understand [“crime”] to mean[,] for example[,] burglary, armed robbery, or murder than for it to mean drunk driving.” 921 F.2d at 89. Bilyeu, by prefacing its enumerated list of “crimes” with “for example,” tells us that the Criminal-Act Exclusion here encompasses more than burglary, armed robbery, and murder. Drunk driving is, in the majority’s parlance, “far from the core criminal offenses,” Maj. Op. 414, of burglary, armed robbery and murder, presumably because the former does not exhibit the deliberate conduct indicative of the latter. Reading Bilyeu as defining “criminal act” in this way, when “J.J. lit the fuse of a bottle rocket” with B.T. nearby, Maj. Op. 411, he committed a “criminal act” within the meaning of the Exclusion because he engaged in a deliberate act that posed a serious potential risk of injury to persons or property.
C.
The majority characterizes the illegal actions of J.J. and the Cambrons thus: “The Cambrons allegedly committed the offense of possessing fireworks without a license, and J.J. the offense of using or exploding a firework without a license. ...” Maj. Op. 414 (emphasis added). The error in the majority’s approach lies in its failure to recognize that the prohibition codified in § 227.710 is the possession, explosion, and use of fireworks. That section contains some specific exceptions to these prohibitions, including an exception for licensed fireworks , displays, but the prohibited conduct is the possession, explosion, and use of the fireworks. And because this activity violates § 227.710, it is a “criminal act” under § 500.080(2). Both the Cambrons (by possessing) and J.J. (by using and exploding) fireworks committed criminal acts under Kentucky’s statutes.
And J.J. and the Cambrons committed criminal acts even if, as the majority believes, the criminal act is the possession, use, or explosion of fireworks without a permit. Neither J.J. nor the Cambrons had any kind of permit to do anything with fireworks. Neither took the precautions that the statute requires permit holders to take to prevent injury from the fireworks. Acting without a permit could well have “resulted in” B.T.’s injury because the permit required the holder to be competent and to take safety precautions.
Regardless of which definition we use, summary judgment is warranted because J.J. deliberately set off a firework, a “criminal act” under both § 227.710 and Bilyeu.
II.
Beyond reversing the district court on the one potentially applicable exclusion the district court actually addressed, the majority holds that summary judgment for *421 the insurer is also inappropriate on the Intentional-Act, N egligent-Entrustment, and Negligent-Supervision Exclusions. In the majority’s words, the district “court found it unnecessary to determine whether the other three exclusions applied.” Maj. Op. 411-12. Nor were these three exclusions briefed on appeal by either party.
“As a general rule, appellate courts do not consider any issue not passed upon below.” In re Morris, 260 F.3d 654, 663 (6th Cir.2001). While Morris is often cited in cases involving waiver, it is equally applicable here. Although some “circumstances [ ] justify departure from the general rule,” City of Pontiac Retired Emps. Ass’n v. Schimmel, 726 F.3d 767, 783 (6th Cir.2013) (Griffin, J., dissenting), reh’g en banc granted, vacated (Nov. 8, 2013), reh’g en banc, 751 F.3d 427 (6th Cir.2014), none warrants a departure from this general rule here. First, the issues have not been “presented with sufficient clarity.” Ibid. To meet this exception, we have required that “[bjoth parties have extensively briefed the issues at stake.” United States v. Pickett, 941 F.2d 411, 415 (6th Cir.1991); see also Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 446 (6th Cir.2012) (holding that the issue was “presented with sufficient clarity and completeness” where both parties “fully briefed” the issue on appeal). Neither party in this case has addressed these three other exclusions in their appellate briefing. See Pl.’s Br. 14; Def.’s Br. 26.
Second, the issues involved are not “wholly legal.” Pickett, 941 F.2d at 415. As the Ninth Circuit has noted, affirming the district court on an alternative basis is only appropriate where the record is adequate and the issues involved are purely legal. Golden Nugget, Inc. v. Am. Stock Exck, Inc., 828 F.2d 586, 590 (9th Cir.1987). The majority describes as “a question of fact” “[t]he applicability of an exclusion in the specific circumstances of a case.” Maj. Op. 415. “[Ijssues related to the insured’s state of mind” are also questions of fact. Ibid. While questions of fact do not preclude summary judgment where “the evidence is so one-sided that no reasonable person could decide the contrary,” In re ClassicStar Mare Lease Litig., 727 F.3d 473, 484 (6th Cir.2013) (internal quotation marks omitted), granting summary judgment on an alternative basis is inappropriate where further factual development may be necessary. See City of Pontiac Retired Emps. Ass’n, 726 F.3d at 783 (Griffin, J., dissenting); Golden Nugget, Inc., 828 F.2d at 590.
The majority’s merits analysis is a case in point. The majority analyzes only the Cambrons’ actions under the Intentional-Acts Exclusion, even though J.J.’s setting off of a firework “could reasonably be expected to cause bodily injury.” Maj. Op. 416. The majority holds that summary judgment would be inappropriate under the Negligent-E ntrustment and Negligent-Supervision Exclusions on the basis of Spivey v. Sheeler, even though Spivey involved injuries that occurred after an eleven-year-old boy climbed up on something, found the key to his parent’s gun safe, unlocked the safe, and then discharged a weapon, all when his parents were away. 514 S.W.2d 667, 669 (Ky. 1974). Here, by contrast, Brad Cambrón unlocked the vehicle from which J.J. retrieved the fireworks, despite knowing that the fireworks were in the vehicle. While the fact-intensive nature of this inquiry may make summary judgment unlikely, we ought not deny summary judgment upon the “further scrutiny,” Maj. Op. 415-16, of issues the district court never scrutinized in the first place.
I respectfully dissent.

. Although the Kentucky Supreme Court in Health-wise of Ky., Ltd. v. Anglin adopted the Penal Code definition of "crime,” it did so because it was the interpretation "favorable to the insured.” 956 S.W.2d 213, 216 (Ky. 1997); see also id. ("We therefore adopt Anglin's definition of ‘crime’ as the correct definition.”). Anglin does not mandate a specific definition.